HERZOG et al. v. NEW YORK TELEPHONE CO.

(Circuit Court, S. D. New York. February 12, 1909.)

1. PATENTS (§ 160*)—CONSTRUCTION—SPECIFICATIONS AND DRAWINGS.

While the invention of a patent must be measured by the claims, yet they cannot be considered to the exclusion of the specifications, but claims, specifications, and drawings showing the particular apparatus must be considered together, and must point out the principle by which the invention is practically operated, and, to make out a case of infringement, the apparatus of the defendant must embody such principle of operation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 234, 235; Dec. Dig. § 160.*]

2. PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC SIGNALING APPARATUS.

The Herzog patent, No. 628,464, for an electric signaling apparatus and circuit, used principally to enable guests in hotels by means of latent signal transmitters in the rooms to signal the office, is valid, but embodies a system of bi-directional signaling to a limited extent only, it being possible to signal from the office to a room only when the transmitter in the room is set for a signal to the office, and is not infringed by the system of bi-directional signaling in use in a telephone exchange.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Seabury C. Mastick (Wm. Houston Kenyon and Seabury C. Mastick, of counsel), for complainants.

Frederick P. Fish (Edward Rector and Charles Neave, of counsel), for defendant.

HAZEL, District Judge. The patent upon which this action is based is for a useful improvement in electric signaling apparatus and circuits; infringement being charged of claims 11, 12, 13, 19, and 20. The patent No. 628,464 was granted July 11, 1899, to Felix Benedict Herzog on an application filed with the Commissioner of Patents on October 25, 1884. The claims in controversy relate to an arrangement of the circuits and apparatus for attracting attention, or a method of electric signaling or calling and then transmitting a message over the line from a so-called latent signal transmitter with which the signaling instrument is functionally related. The subject of the patent was commonly known by the designation of the "telesome system," and about a decade or so ago it was extensively used in rooms or apartments of guests at prominent hotels to transmit to the clerk of the hotel or to the central office by means of the latent signal instrument the wishes or requests for service of the guests. When the signaling feature of the instrument was operated, the message was automatically transmitted to the central office, not at the precise time when the signal was set by the guest, but subsequently, when the operator at the central office released it. Upon this point the specification says:

"The apparatus retains the signal as set until it is released directly or indirectly from a distant point by the person who is to receive the signal at the moment he is ready for it, when the signal is automatically transmitted to such receiver. These instruments being capable of being set so as to transmit alterable signals or combinations of signals enable the sender to convey any desired information to the receiver, the time of receiving such signal, however, being entirely under the control of the receiver."

A reproduction of the device as shown in the drawing attached to the patent in its normal condition follows:

Fig. 1.

Fig. 2.

Polarized armature.

Fig. 3.

The patent shows that the signal, an indicator on the dial of the apparatus, and a means for setting it are combined with means for releasing it from the escapement which is controlled by an electro-magnet in such a way that, when set, the annunciator automatically displayed or sounded at the hotel office notifies the clerk that the indicator has been moved into a desired position by the guest, and that a message has been transmitted. To receive such message, however, the clerk first inserts a plug in the proper springjack. Such action causes a current to flow in a direction opposite to that flowing from the main battery, and the clock mechanism of the instrument is then un-

locked; the indicator going back to its mormal position, and giving notice by its sound that the message has been received at the central office. The specification, after describing the means for keeping the escapement locked, says:

"The other device for holding the escapement unlocked except when the instrument is set, which may be used alone or in connection with the first-described device, consists in providing the electromagnet, C, with a polarized armature. I therefore make the armature a permanent magnet mounted in trunnions attached to the frame of the instrument, so that it will be attracted by a current of one polarity only. The armature being permanently magnetic normally attracts itself to the electromagnet when no current is in circuit, so as not to lock the escapement, and consequently during the breaks of the circuit it does not drop down and stop the clockwork."

No message can be received until the receiver upon observing the annunciator in the circuit drop down, or, hearing it ring, inserts in the springjack the connecting plug resulting in a current of opposite polarity to the original current transmitting the signal. To abandon a call the user of the instrument before receiving an answer may manually return the indicator to its original position by means of a projection on the side of the instrument which when moved downward releases the escapement. The apparatus is constructed and the circuits arranged so that there can be no interference of signals with each other. If different instruments are set at the same time, the signals are retained until it is convenient for the receiver to electrically receive them by making the second battery connections and releasing the instruments one after another. It should be clearly understood that it is the reversal of the current which causes the armature to be attracted, in consequence of which the escapement is released. There are no means specified in the patent for the origination of a call or signal from the central office to the room of a guest. The latent signal transmitter concededly cannot be actuated to transmit a message from the central office to the room of a guest unless the instrument has been set, and then only when the operator inserts the plug in the springjack, and causes a current in a separate circuit of opposite polarity to move the indicator on the dial to its normal position. The claims in issue, which are for a combination of elements, are not so essentially different as to require verbatim statement as to each of them. Claim 11 reads as follows:

"11. A signaling system comprising at each of several substations a circuit-closing device having normally-separated terminals during the position of rest and means for joining these and for holding them joined in the position of operation of the device; combined with a magnet and adjuncts so constructed, adjusted and arranged with reference to the condition of a normal current as not to be affected thereby; at the central station an annunciator with a separate element for each of the lines leading separately from the substations; and a separate cut-out switch-terminal between each such element and its circuit-closer; a source of current-supply common to all the lines and of a character adapted to energize the annunciator elements immediately on closure of the terminals at a substation and to continue this energization as long as the circuit remains closed thereat and the said annunciating element is not cut out; together with a common switching-plug arranged and adapted to co-operate with the several switching-terminals; and means for controlling through it, the substation-magnet of the line switched by the plug."

This claim specifically and broadly describes a normally closed circuit device at substations and means for joining the terminals, character of the magnets, the annunciator for each line, the cut-out switch terminal, the source of current to energize the annunciator, together with the switching plug to control the magnet in the instrument. Claim 12 emphasizes the reversed polarity current by means of a second generator to prevent circuit interference from other users of the instrument, and to cause the magnet to unlock the escapement. Claim 13 is for the asserted outward call through the instrumentality of magnet, C. In full such claim reads:

"13. At each of several substations a calling apparatus including a circuit-terminal and a manually-operated element co-operating therewith and constructed to have with respect to the terminal a normal position of rest, and one of action; separate lines from these stations to a central station having a separate annunciator device for each such substation and a common connection to a common source of current arranged to be controlled by the change of position of the substation manual element to begin the actuation of the corresponding annunciator device and normally to continue this actuation until the said substation element is again in its position of rest; a switching connection at the central station for each such line arranged during its operation to interrupt the operation of the annunciator element; and co-operating therewith, a circuit connection arranged and adapted to control current of another character or condition; together with a controlled device at each substation arranged to be controllable by the said changed current and to operate as a notification to the transmitting operator."

In claim 19 the controller device is magnetically controlled, and claim 20 mentions a polarized device. In other respects such claims are substantially similar to No. 13. The complainant contends, first, that the patentee solved the problem of bi-directional signaling as applied to circuits of the class mentioned in the claim, a practicable system of signaling in both directions from a substation to a central and vice versa; and, second, that the defendant telephone company uses and employs in its service the signaling organization described in the patent in suit. The principal defense is noninfringement. The question is important whether the methods of signaling described in the patent and claims are restricted to the patentee's main invention, the latent signal transmitter, or whether they are also adaptable to a telephone system such as the defendant employs. It seems to me to be necessary to describe the scope of the claims in issue. In order to do this, resort must be had to the specification and the state of the art at the date of the application in suit and to the claim of the defendant that the application was amended to cover or include the defendant's system of signaling after it had been in public use. Is the Herzog invention capable of bi-directional signaling, and, if so, does the defendant attain such a result by using the signaling system described in the claims? The broad wording of the claims renders it quite possible to recognize in the defendant's signaling apparatus the essential elements of the patented Herzog combination, but such wording cannot be considered blindly without qualification or consideration of the particular thing the patentee claims to have originated. The claims cannot be considered to the exclusion of the specification, for the claims, specifications, and drawings showing the particular apparatus must be considered together. Such I believe is the holding of the

pertinent decisions. Brooks v. Fiske, 15 How. 212, 14 L. Ed. 665; Westinghouse v. Gardner, etc., Fed. Cas. No. 17,450; Matthews v. Shoneberger (C. C.) 4 Fed. 635. While it is true that the claim must measure the invention, as stated by the Supreme Court in Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122, yet the description must point out the principle by which the invention is practicably operated, and, to make out a cause of infringement, the apparatus of the defendant must embody such principle of operation. If the signaling in question is foreign to that employed in telephony, or if the prior art discloses an inward and outward call, the claims must be restricted to the particular system described. The specification declares the invention to be equally applicable to telephone exchange systems and other circuits, but it does not point out the specific applicability of Herzog's method of signaling to a telephone system, and the proofs establish that the original intention of the patentee was that his device should also be used as an auxiliary of the telephone system. If the improvement, however, covers bi-directional signaling over a line circuit controlled by a common battery with normally separated terminals as specified in the claims, the system of the defendant if it substantially uses such elements comes within the scope of the claims.

From this point of view the essential feature, namely, the means for an inward and outward call, may now be more fully explained. The inward call consists of simply closing a normally open break in the circuit at the substation, there being a multiplicity of subscribers each having means to call the central office independently of any other subscriber. This may be done by turning the indicator on the dial of the instrument to a desired position, enabling the current from the common battery to energize the annunciator, which then remains energized until the circuit is closed by the operator receiving the message. The outward call depends for its functional result upon separate devices normally operated at the central office. In addition to the common battery supplying current to the circuits arranged parallel to each other so as to energize the annunciator and the apparatus with a normal break, including the magnet, C, at the substation, there is provided at the central office springjacks in each circuit placed outside of the annunciators, but in series with them, together with a plug attached to a wire connected to a second generator of different current. The insertion of a plug in the proper springjack makes connection with the second battery, cutting out the common battery and the line annunciator, permitting a current to flow from the second battery through the magnet, C, so as to attract its armature. This method results in an audible or visual notification at the substation. The magnet, C, is not energized by the current from the common battery to give the inward call, but according to the patentee its polarized armature enables the release of the escapement and the sending in of an outward call. It is not pretended that the ingoing signal on a single line was new at the date of the invention in suit. It was old to signal the substation at a central station with normally open contacts which are joined by inserting a plug in the springjack on a single cir-

cuit arranged in multiple and fed by a common battery; and the arrangement of the annunciators connected in parallel was also commonly known. Indeed, neither the use of a common battery at central office to feed a multiplicity of lines, a circuit closing device at the substation, a magnet, cut-out switch-terminal, the generator of different current, a switching plug, a springjack, a polarized armature were new contrivances in the art at the date of the Herzog invention. Such elements, however, have by Herzog been so arranged and assembled as to create a new combination for the achievement of a new result. The patentee created a principle of operation which was primarily applicable to the latent transmitter, but the rule is undeniable, though its application is disputed, that if by his mode of operation the plaintiff achieved a bi-directional signaling, assuming the signaling shown in the patent to be such, then, even though he did not know at the time of filing his application that his method was applicable to a telephone ·exchange, he is nevertheless entitled to·the protection of the patent laws. He was not bound to set forth all the known and unknown·uses of his discovery. Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, 30 L. Ed. 1064; Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Pike v. Potter, 3 Fish. Pat. Cas. 55, Fed. Cas. No. 11,162. The ingoing call and the system by which it operated concededly was understood in the art.

In the Cheever patent, No. 208,463, dated October 1, 1878, which related to a multiple system of circuits, a subscriber upon lifting his telephone from the hook closed a normally open circuit to call the central office. To reply the operator inserted a plug in the springjack, cutting out the common battery and the annunciator, and conversation over the line without further signaling could then be carried on. A talking current having no relation to the common battery was generated; such functional result being due to the energization of the polarized magnet in the receiver which was used at both ends interchangeably for speaking and listening. It will be observed that Cheever employed merely an inward call, and therefore cannot be considered to limit the claims in suit. In the patent to Scribner, No. 245,404, dated August 9, 1881, is shown a normally open contact, which is kept open by the weight of the receiver hanging on the switch hook. Upon lifting the receiver, the terminals are joined, and then a current from the common battery passes from the substation to an annunciator, causing it to drop. The operator replying inserts a plug on a cord in the springjack of the annunciator line, and talks with the subscriber. An outward call, strictly speaking, is not disclosed by Scribner's invention. He employed a different current, but he applied it to an additional circuit to ring a bell when he desired to call the substation. In the Roosevelt patent is shown a system of bi-directional calling of the normally closed type. So also in the Hewett patent, No. 245,494, dated August 9, 1881, the circuit connections are normally closed, and the current from the battery passes continuously and wastefully over the line. The contacts are opened when the receiver hook is raised resulting in the movement of the central office annunciator, while a second battery current was used to ring the bell at the

substation. The continual activity of the battery current and the closed circuits of Hewett and Roosevelt will not admit of their anticipating the patent in suit. Such inventions were doubtless based on a radically different principle at the date of the application for the patent in suit, though at the present time the supposedly insurmountable obstacles to the complete success of the Roosevelt and Hewett inventions could be readily overcome. In the Herzog patent, as already indicated, the circuits are normally open, and the current is shut off or closed against the escapement by the employment of the polarized magnet, which, in combination with a current from the second battery, unlocks the latent device, and operates the signal at the substation. The complainant emphasizes the point that the locking of the escapement in the latent transmitter is functionally independent of the signaling system, that the inward call is unaffected by the magnet, C, but that the magnet is affected by the outward call owing to the employment of a current of different characteristics. The patentee rightly claims that the magnet has different functions, first, to lock the instrument giving the inward call, which is first manually set, as already described; second, to give the outward call by inserting a plug in the springjack to attract the armature as a result of the current flowing from the second battery, and thus giving an audible or visual notification at the substation; third, by attracting the armature to unlock the escapement; and, lastly, to enable a reopening of the circuit. Such a combination is not disclosed in the prior art. But the defendant contends that the Herzog circuit arrangements are of a specific character applying to a latent signaling instrument, the invention disclosed by the patentee in his patents of a prior date. From my examination of the record, however, I am satisfied that the scope of the claims is of such breadth that they cannot be restricted to Herzog's main invention, but that they in fact cover and include any apparatus which uses the particular method of signaling set forth in the description.

This brings me to the question of infringement. The signaling of the defendant followed by a conversation between two persons at different substations is as follows: Upon the instant that the receiver is lifted from the hook a current from the common battery at the telephone exchange flows through the circuit and through a lamp annunciator at the exchange lighting it. The operator at the telephone exchange then knows that the person whose line lamp is bright wishes to converse with some one at another substation. The operator inserts a plug in the calling subscriber's springjack which without interfering with the battery current extinguishes the annunciator lamp, and she thereupon ascertains the wants of such calling subscriber. If he wishes to converse with another subscriber, he gives a number, and the operator inserts another plug in the multiple springjack of the subscriber corresponding to that number. When the connection is made, a supervisory lamp is lighted, the operator depresses a calling key signaling the called subscriber, and causing an alternating current from a generator at the exchange to pass over the line which rings the bell of the called

subscriber. Conversation may then be carried on directly the called subscriber raises his telephone from the hook switch. By removing the receiver from the hook the contacts are joined, the current flows through the supervisory relay attracting the armature, and the lighted lamp is cut out. To disconnect a line, each subscriber hangs his receiver on the hook, which breaks the flow of the current and lights a lamp, thus giving notice to the operator that the lines may be disconnected. It is not necessary to specify the various parts, the arrangement of the circuits, and the connections together with their functional results. They consist of a complicated mass of instrumentalities, their relations, however, to a signaling system becoming simplified when their presence or absence in a circuit is once understood. The sketches in evidence with their explanations have been helpful. A simplified sketch of defendant's signaling system follows:

The complainant contends that the claims in issue are embodied in the defendant's method of inward and outward calling; that the same result is achieved by defendant, though it has extended the range of the outgoing call by known devices and methods so as to make such call whenever desirable. It is also claimed that the apparatus of the defendant is arranged in multiple with a break, instead of in series, which causes the different currents to operate so that only one of such currents to the exclusion of the other will energize the bell magnet; that the defendant uses what is known as a condenser, which shunts a direct current in its calling branch wire at the substation to allow the alternating current to pass through it so as to achieve the bi-directional calling. It is explained that an alternating current passes through the condenser to give the inward call in the defendant's system when the subscriber lifts his receiver from the hook, and that thereupon the circuit closes while the current from the common battery energizes the annunciator giving notice to the operator of the action of the subscriber. When the operator at the telephone exchange calls a subscriber to the telephone, the alternating current of the generator passes through the line. If the hook is in its normal position at the substation, the current is separated, and passes through the branch circuit to the hook. As the bell magnet and the condenser are in the branch circuit the current passing through it rings the bell. In complainant's organization, as already shown, the magnet, C, is energized by a current from the common battery to repel the armature, and by a current from the second battery to in turn attract it so as to enable the central office to ascertain the requirements of the guest. Is such method an outward call as that term is defined in the art? There is no possible way by which the central office when the instrument is released may call the substation. No messages of any kind can be transmitted from the central office without a message transmission having first been initiated at the substation. I think there is a radical difference between complainant's and defendant's method of bi-directional signaling. The defendant though it has normally open contacts with a common battery current flowing when the contacts are closed, and a multiplicity of subscribers, it nevertheless uses parts having other functions than to merely produce signaling from terminal to terminal. The defendant does not use a polarized magnet to repel the armature, nor is the armature of the magnet attracted by a different current. In fact, the bell magnet does not operate to signal the telephone exchange and then to transmit a reply message. It does not seem to me that a combined result is produced in defendant's inward and outward calling, but each call is separate and independent of the other. No return signal is shown other than the operator's articulated request of the signaling subscriber as to his wants, and, as already stated, that is done by simply inserting a plug in the springjack, then speaking into the receiver, thereby establishing a talking current as shown in the Cheever patent. The later signaling of a called subscriber

by depressing a ringing key and using an alternating current to energize the bell magnet is over a line having no relation to the line of the calling subscriber until the called subscriber moves his receiver from the hook in response to the bell notification. The Herzog patent is not for such a method of signaling. In the patent in suit the forces when set in motion as already indicated accomplish a different result. What Herzog aimed to achieve was due to an adaptation from which emerged an improvement of the latent signal transmitter. The defendant insists, however, that it was old to arrange a bell magnet in multiple with a break, and such an arrangement was the equivalent of a magnet in series with a break. And it is urged that the arrangement of the condenser in the branch line in which is placed the magnet was a substantial equivalent of Herzog's method of achieving the result aimed at by him. From my examination of the questions submitted it is my opinion that, though the parts and instrumentalities combined by the defendant were old, they nevertheless accomplished a different result than is possessed by the Herzog improvement. In Electric Signal Co. v. Hall Signal Co., 114 U. S. 87, 5 Sup. Ct. 1069, 29 L. Ed. 96, the Supreme Court, dealing with a somewhat similar situation, says:

"To constitute identity of invention, and therefore infringement, not only must the result attained be the same, but in case the means used for its attainment is a combination of known elements, the elements combined in both cases must be the same, and combined in the same way, so that each element shall perform the same function, provided, however, that the differences alleged are not merely colorable, according to the rule forbidding the use of known equivalents."

See, also, Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Edison v. American Mutoscope & Biograph Co., 151 Fed. 767, 81 C. C. A. 391. This rule is not inapposite to the case at bar. The complainant further contends that the receiving apparatus, T, in the patent in suit functionally operates as does the supervisory device of the defendant. In this I do not agree, as the specification clearly indicates that the instrument, T, is simply for receiving the message to be transmitted from the substation. In the defendant's system there is no supervisory when the telephone exchange is communicated with by a subscriber. Accordingly, the supervisory of the defendant is not the equivalent of the receiving instrument, T, which evidently signals whenever the circuit is joined or disjoined at the substation.

It is next contended by the defendant that the broad claims in controversy were not filed until after its signaling system had gone into public use, and that such claims were purposely included to cover the system of signaling. This assertion would seem to be not altogether groundless, but I do not deem it necessary to limit the claims for that reason. Herzog omitted to make clear in his description the inward and outward system of signaling used by the

defendant, or its substantial equivalent, and his claims are broader than is warranted by the specification.

There were other propositions argued at the bar, but, having reached the foregoing conclusion, it is obviously unnecessary to discuss them. The Herzog patent, No. 628,464, is valid, but not infringed by the defendant.

Decree for the defendant, with costs.