### HERZOG et al. v. NEW YORK TELEPHONE CO.

(Circuit Court of Appeals, Second Circuit. February 8, 1910.)

#### No. 111.

PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC SIGNALING APPARATUS.

The Herzog patent, No. 628,464, for an electric signaling apparatus and circuit used principally to enable guests in hotels by means of latent signal transmitters in the rooms to signal the office, embodies a system of bidirectional signaling to a limited extent only, it being possible to signal from the office to a room only when the transmitter in the room is set for a signal to the office, and is not infringed by the system of bidirectional signaling in use in a telephone exchange.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by Felix Benedict Herzog and others against the New York Telephone Company. Decree for defendant (172 Fed. 425), and complainants appeal. Affirmed.

William Houston Kenyon and Seabury C. Mastick, for appellants. Charles Neave and F. P. Fish, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is a suit to restrain the alleged infringement of letters patent No. 628,464, issued to Felix Benedict Herzog on July 11, 1899, for an improvement in electric signaling apparatus and circuits. The application for the patent was filed October 25, 1884.

The patentee stated in the first part of his specifications that in an earlier patent he had described an automatic signaling instrument, the main feature of which was that it could be set by a person desiring to signal a distant point, and was so constructed that the signal would not be transmitted at the moment of setting the instrument, but would be retained until released by the action of a person at the distant point when he was ready to receive it, and would then be automatically transmitted. These instruments were capable of being set so as to transmit alterable signals and combinations of signals and thereby convey information. The patentee called these instruments "latent signal transmitters" because they retained the signal—it was inoperative until released—and they were the essential features of the "teleseme system" in use in many hotels some 10 years ago.

It is unnecessary, in the view we take of the case, to differentiate between the prior Herzog patents and the patent in suit. Taken together they undoubtedly show the development of the latent signal system, although the complainants contend that the present patent relates primarily to circuit connections rather than to the latent signal instrument. We shall confine ourselves to the patent in suit and shall examine the case along the lines laid down by the complainants.

Turning then to the specifications, it will be noticed that the patentee describes his apparatus with especial reference to its use in hotels:

"Its main feature consists in providing the guest's room with such an instrument whereby he can at pleasure signal to the hotel clerk his various wants, and so combining and connecting these separate instruments with means for releasing them and receiving the signals controlled by the hotel clerk or receiving person that, if desired the mere act of setting any guest's instrument automatically operates an annunciator at the receiving end so as to inform the clerk that the particular instrument has been set and that thereupon the clerk, as soon as prepared to receive the signal, can, by making certain connections, introduce a receiving instrument, release the guest's signal instrument and thus receive the guest's signal at pleasure."

But while the apparatus was especially designed for hotels, the patentee also says in his specifications:

"I shall describe my invention chiefly as applied to hotel purposes; but it is equally applicable to telephone exchange systems or other circuits."

And in another part of the specifications he says:

"My present invention relates principally to the application of such apparatus to telephone exchanges, hotels and private circuits, though parts of the invention are applicable to many circuits."

It is, however, apparent from the language of the specifications that the apparatus which the inventor proposes to apply to telephone exchanges was the latent instrument itself. There is nothing to indicate that he had in mind any such application of the circuit connections of the patent separate and apart from the latent signal apparatus. Still it is undoubtedly true that a patentee is not obliged to describe all the uses which the subject of his patent is capable of. He is entitled to all the beneficial functions of his invention whether he described them or not.

The following drawing, similar to the third figure of the patent, illustrates the apparatus and circuits described in the specifications:

The different parts of the apparatus illustrated and its operation are thus described in the specifications:

"D, D, D, D, represent separate latent signal instruments constructed as I have described, one being placed in each guest's room.  Each instrument is connected by a separate wire with the receiving station or clerk's office, and each circuit leads through a separate spring-jack, M, and an annunciator, N, after which the circuits join and lead through a battery, R, to the ground.  In a separate circuit are placed a battery, S, opposite in polarity to the battery R, and a sounder, T.  This circuit terminates at one end in the ground and at the other in plug, t, one side of which is insulated, as shown.  The apparatus is

represented as in its former condition, and all the separate circuits are open at the guest's instruments, a notch in each break-wheel being under the contact-springs.

"When any guest sets his instrument, it closes the circuit and drops the annunciator drop corresponding to that instrument and room, thereby making the clerk aware that that instrument has been set. It is to be observed that the instrument remains locked when set, for the reason that the polarity of the current in circuit is such as to repel the armature and make it lock the escapement. The circuit is thus closed at the room and remains so closed until the clerk opens it again by his action in releasing the latent signal. The annunciator may be provided with a continuous ringing arrangement to call attention, but in any case will prevent the drop from being raised inadvertently before the number is noted, as if so restored it will drop back again until the current is again opened at the room by proper means. The clerk thereupon inserts the plug, t, in the proper spring-jack, and the battery S, being of opposite polarity to the battery R, causes the guest's instrument to be released and transmit its signal, which is received by the clerk on the receiving instrument, T, for which purpose a sounder or bell may be employed to sound or a visual indicator or a register to record the signals received."

The claims of the patent in issue are Nos. 11, 12, 13, 19, and 20. Claim 19 is selected by the complainants as typical, and is as follows:

"At each of several substations a calling apparatus including a circuit terminal and a manually operated element co-operating therewith and constructed to have with respect to the terminal a normal position of rest and one of action separate lines from these stations to a central station having a separate annunciator device for each such substation, and a common connection to a common source of current arranged to be controlled by the change of position of the substation manual element to begin the actuation of the corresponding annunciator device and nominally to continue this actuation until the said substation element is again in its position of rest. a switching connection at the central station for each such line arranged during its operation to interrupt the operation of the annunciator element; and co-operating therewith, a plug and cord adapted to be used in turn with all the switching connections, and a second connection controlled by the plug and supplying current of another character or condition; together with a magnetically controlled device at each substation arranged and adjusted to be controllable by the current controlled by the plug and not by the normal current and to operate as a notification to the transmitting operator."

The scope of this claim can best be appreciated by analyzing it and examining its elements in reference to the structure illustrated in the drawing and described in the specifications:

The first element of the claim is:

"At each of several substations a calling apparatus, including a terminal and a manually operated element co-operating therewith, and constructed to have with respect to the terminal a normal position of rest and one of action."

In the apparatus described and shown in the patent the substation is the latent signal instrument in the guest's room. The circuit terminal is the contact-spring, and the manually operated element is the break-wheel. These are nominally separated and in a position of rest; the spring being opposite a notch in the periphery of the wheel. They can be brought into a position of contact and, consequently, of action by rotating the wheel by hand.

The second element of the claim is:

"Separate lines from these stations to a central station having a separate annunciator or device for each such substation, and a common connection to a common source of current arranged to be controlled by the change of position

of the substation manual element to begin the actuation of the corresponding annunciator device, and nominally to continue this actuation until the said substation element is again in its position of rest."

In the structure described and shown in the patent, the parts embraced in this element are the separate signal circuits to each latent signal instrument, the individual annunciators, and the common battery.

The third element of the claim is:

"A switching connection at the central station for each such line arranged during its operation to interrupt the operation of the annunciator element."

In the apparatus described in the patent this element is the plug and cord at the central office. It is not regarded as of importance, however, that the annunciator should be cut out of circuit when the plug is inserted, for the patent says:

"Of course there is no objection in having the annunciator drop magnet left in circuit other than that it increases the resistance of the circuit."

The fourth element of the claim is:

"And co-operating therewith a plug and cord adapted to be used in turn with all the switching connections and a second connection controlled by the plug and supplying current of another character or condition."

In the apparatus described and shown in the patent, the plug at the central station is adapted to be used with all the switching connections and also controls a second connection with the battery S which is a different source of current from the battery R and of opposite polarity. When the plug is inserted in the spring-jack at the central station, the current flows from the second source of supply to the substation and energizes the magnet shown at the top of the left-hand figure so that it attracts its armature and releases the signaling instrument, which thereupon transmits its message to the central station.

The last element of the claim is:

"Together with a magnetically controlled device at each substation arranged and adjusted to be controllable by the current controlled by the plug and not by the normal current and to operate at a notification to the transmitting operator."

In the apparatus of the patent this magnetically controlled device is, strictly speaking, the armature of the magnet above referred to. Speaking more broadly it is the magnet, the armature, and the break-wheel. They serve to hold the signaling instrument in its set position and to release it so that the message can be sent in when the central office is ready to receive it. When the instrument is released its running down indicates either audibly or visually to the person at the substation that his message has been received.

And here it should be observed that all that the patent from beginning to end says about signaling from central to substation—the "outward call"—is as follows:

(1) The claim—as already noted—speaks of the "notification to the transmitting operator" and implies a prior transmitting operation on his part.

176 F.—23

(2) The specifications say:

(a) "This opening of the circuit (by the clerk), moreover. is so arranged as to serve as a return-signal to the guest and to indicate to him that his call has been noted."

(b) "When the clerk releases any latent-signal instrument, the guest is informed of the fact by observing the hand of the instrument or by the noise of the clock work in unwinding and is thereby assured that his wants are being attended to."

It is obvious from the claims and specifications as a whole that what the patentee especially desired to provide was means of communication from guest to central office, and not from central office to guest—that the outward notification was merely an incident to the inward call.

Up to this point we have examined the claim in question in connection with the specifications and drawings, both of which refer to latent signal instruments. The whole organization of the patent seems to center around these instruments. There is much ground for contending that it cannot be read away from them—that the patent covers circuit connections only in connection with such instruments. And, if this be true, want of infringement is obvious, for it is conceded that the defendant does not employ latent signal instruments or any devices having similar functions.

The complainants, however, as already indicated, urge that the claim is for circuit connections, and not for the latent signal instrument or connections solely therewith, and the feature of the invention is said to be the "to and fro calling system" and the capacity for bidirectional calling embodied in the last element of the claim which we have examined.

Assuming then that we may eliminate from the patent, as the complainants have sought to do, all reference to the latent-signal instrument, it must still be clearly borne in mind that the "notification to the transmitting operator" of the last element of the claim is in the nature of an acknowledgment signal rather than an independent signal. Indeed, it is not contended by the complainants that in the specific structure of the patent an initial message can be sent from the central office to the substation. And while, for the purposes of this case, we may assume that the specifications and drawings can be considered as applying (1) to a calling system and (2) to a latent signal system and confine ourselves to the former, we see no ground whatsoever for holding that the calling structure covered by the claim has any greater capacity for bidirectional signaling than that illustrated in the drawings of the complainants' own brief, viz., a capacity to send a signal from central to substation as the result of initial action there. To give the claim a broader application would be to depart from its own language as well as to wholly ignore the extracts from the specifications which we have quoted. We cannot accede to the proposition that the patentee can, under any doctrine of equivalents, change or add to the circuit connections of the patent so as to make the apparatus work in a different way or under different conditions.

Consequently, even if we admit that the claim is essentially for circuit connections and not for a latent signal instrument, still in view of its own language and of the specifications and drawings it must be

construed as covering only apparatus the parts of which act in such relation and subordination to each other that a signal from central office to substation follows only as the result of prior action taken at the substation. There must be an electrical or mechanical connection between the element used by the transmitting operator and the element employed for the return signal.

This limitation upon the scope of the claim renders it possible to confine the examination of the question of infringement within comparatively narrow bounds, and, possibly, to avoid altogether the question of validity. We have to look in the defendant's structure for the elements which we have found in the claim co-ordinated in the same way. If we do not so find them, infringement is not established, and it is unnecessary to consider the questions whether the patent is valid in view of the prior art, or whether on account of such art the patent should be construed broadly or narrowly. Only in case infringement is established is the question of validity important. Only in case the defendant infringes the claim as we have construed it is it important to consider whether we are justified in assuming, in accordance with the complainants' contention, that the claim should be treated as covering circuit connections separate and apart from the latent signal instrument.

Turning now to the defendant's structure, we find that it is operating a telephone system consisting of: (1) The apparatus at each subscriber's station (the substation); (2) the lines connecting each subscriber's station with the central station or exchange: and (3) the apparatus at the central station for receiving and making calls and permitting the intercommunication of subscribers.

All the apparatus and circuits of the defendant's system are telephone apparatus and circuits, and there seems to be little ground for the complainants' attempt to differentiate between its signaling part and its telephone part. In order, however, to determine whether the claim in question covers any portion of the defendant's apparatus, we shall only examine those parts which the complainants assert constitute defendant's "signaling system" and have the limited capacity of bidirectional calling covered by the claim. We will attempt to read the claim upon the defendant's apparatus.

At each subscriber's station in the defendant's system there is a break in the circuit at the telephone hook normally maintained open by the weight of the telephone receiver and closed when the receiver is removed from the hook and the latter moved by spring action into contact with the circuit terminals. Although the hook is actuated by a spring and not by hand, it may perhaps be regarded as the manually operated element of the claim. It is in a normal position of rest when the receiver is on the hook and is in a position of action when the receiver is off the hook and it is moved into contact with terminals. We will assume that this apparatus is covered by the first element of the claim, although, were we considering the prior art, it would be difficult to see why, in case this element appears in the defendant's structure, it does not also appear in the organization of the prior Cheever patent (No. 208,463). In that organization there is at a sub-

station a circuit terminal and a spring normally held in a position of rest by the weight of the receiver—an exact equivalent of the hook—and brought into a position of action when the receiver is removed.

Similarly we may assume for the purposes of this case that the defendant's apparatus embraces the second and third elements of the claim. There are separate lines from each subscriber's station to a central station, a separate annunciator device for each subscriber's station, and a common source of current arranged to be controlled by the manual element at the subscriber's station to actuate the annunciator device. So there are switch terminals the operation of which interrupts the operation of the annunciator device.

In so far as the claim covers automatic signaling from a substation to a central station, a common battery and the interruption of the annunciator by the central operator, undoubtedly the defendant's apparatus comes within it. So also it may be remarked would the structure of the prior Cheever patent. The complainants' expert says:

"The Cheever organization does embody automatic signaling and a common battery."

And here it should be noted, also, that the claims of the patent not embracing the return signal feature seem clearly to be anticipated by this Cheever patent.

The substantial questions of infringement arise then in the attempt to read the concluding elements of claim 19—especially those relating to the return signal—upon the defendant's apparatus. As we have already pointed out, the claim calls for a second source of current at the central office of opposite polarity to the normal current. When the plug is inserted at the jack in the central station, this second kind of current flows from the central station to the substation and controls a magnetically controlled device—the armature of the magnet—at the substation "to operate as a notification to the transmitting operator." But, as we have further pointed out, this second kind of current cannot be made to flow unless and until the transmitting operator has initiated the operation by closing the circuit with the manually operated element. An independent call from central station to substation is impossible with the apparatus of the patent.

Now what is there in the defendant's structure which has similarity to this apparatus of the patent?

The complainants insist, in the first place, that the magnetically controlled device of the claim is the armature of the bell at the subscriber's station, which makes it necessary for us to consider the nature and operation of such bell. At each subscriber's station in the defendant's system there is an electric bell which is rung by an alternating current of electricity sent over the circuit by the central operator when she desires to call the subscriber to his telephone. The alternating current passes through a magnet and causes its armature to vibrate and to make the clapper attached thereto strike the bell. The bell or the armature may be called the "magnetically controlled device" of the claim, and it is controlled by a different kind of current from the normal current. So it must be observed that the ringing of the bell is a signal to the subscriber. But the vital question is whether the

ringing of the bell is a return or acknowledgment signal within the meaning of the claim as we have interpreted it—whether it results electrically or mechanically from any initial operation by the transmitting operator—or is a wholly independent operation.

It seems to us entirely clear that there is no electrical or mechanical connection between any act of the subscriber and the ringing of the bell of his telephone by the central operator. The subscriber desires to call another subscriber. He takes his receiver off the hook; the current flows, and the annunciator at the central office falls. The central operator seeing the annunciator fall inserts a plug in the jack of the calling line. The operator is then in communication with the subscriber, ascertains the connection desired, and takes the necessary steps to make it. Intercommunication having taken place, the subscriber hangs up the receiver, and his apparatus is in the same condition as it was before he gave the call. The bell of the calling subscriber has not been rung. In so far as the bell was affected by the subscriber's action, it might as well have been upon an entirely different circuit. The bell magnet has no relation to or control over the hook or its contacts. It is true that the ringing of a subscriber's bell may be the result of a previous call by the subscriber in the sense that it was the circumstance which caused it. The central might call the subscriber to tell him that she could not get a desired connection which he had previously telephoned her to ask for. But so she might call him to state her inability to get a connection which he had requested by letter or through a messenger. There would be no combination or joint operation. The bell at the subscriber's station is unrelated structurally or operatively to the apparatus by which the subscriber calls the central station. The bell does not ring as a notification to the transmitting operator in the sense that it is the completion of an operation instituted by him. It always rings as an independent operation which may or may not have been brought about by the circumstances of a previous call by the subscriber. There is no such interrelation between the different parts of the defendant's apparatus that the signal from central office to substation follows as the result, either mechanically or electrically, of prior action taken at the said station. While the elements of the defendant's apparatus are similar to those of the organization of the patent, they co-operate in a different way and produce different results.

It is urged, however, by the complainants, that apparatus only should be compared, and that the defendant's apparatus has the capacity for the return signal of the apparatus of the patent and more. But even this is not shown. The return signal of the apparatus of the patent can only be sent over the defendant's circuits when the receiver is off the hook. But it is not intended that the bell shall be rung when the receiver is off the hook. It is shunted and is not organized to ring. If it does ring, the operation is an accidental, uncertain, and unintended one which should not be considered in determining the operation or capacity for operation of the apparatus. Instead of there being similarities between the apparatus of the patent and that of the defendant's system—so far as the calling of the substation is concerned— they are marked in dissimilarities. The magnetically controlled device

of the patent can only receive a signal when the manually operated element has made the circuit connection. The magnetic device—the bell—of the defendant's apparatus can only be rung when the manually operated element has not made the circuit connection. The apparatus of the patent is capable of bidirectional signaling only to the limited extent that return dependent signals can be sent. The apparatus of the defendant's system is capable of almost unlimited independent to and fro calling, but cannot be used for dependent signaling. The only time when one apparatus can be used is the time when the other cannot be used.

It follows that infringement is not established. And this result cannot be regarded as surprising. While we have followed the lines of the complainants' discussion and have sought to ascertain the generic invention of the patent sued upon as distinguished from any specific illustration thereof, it has still always seemed apparent that the real subject-matter of the patent related to something else than telephony. The object of the patent considered as a whole was to improve the inventor's latent-signal apparatus—to relieve its peculiar necessities. It is true that the claims are broader than the specifications. They were prepared some 14 years after the application was filed, and the electrical art had developed phenomenally in the meantime. Nevertheless, it is only by placing strained constructions upon words, by laying special stress upon isolated sentences, and by reading the claims without reference to the specifications and drawings, that any foundation is shown for the contention that the patent covers circuit connections employed in the defendant's telephone system. And, for reasons already stated at length, such interpretation of the patent is impossible.

The decree of the Circuit Court is affirmed, with costs.