40 C.C.P.A. (Patents)

## BIERLY v. HAPPOLDT.

### Patent Appeal No. 5921.

United States Court of Customs
and Patent Appeals.

Feb. 6, 1953.

Campbell, Brumbaugh, Free & Graves, New York City (Walter H. Free, New York City, Thornton F. Holder, Painesville, Ohio and John R. Janes, New York City, of counsel), for appellant.

J. M. Castle, Jr., Wilmington, Del., for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority to appellee because of its holding that

the disclosure in the application of appellant, who is the senior party, does not clearly support the counts.

The application of Bierly, serial No. 21,-742, entitled "Flame-Resistant Composition," was filed April 17, 1948; that of Happoldt, serial No. 61,899, entitled "Flame Retardant ·Compositions," was filed November 24, 1948.

A patent, No. 2,480,298, was issued upon the Happoldt application August 30, 1949. It contained five claims. In due time claim 1 was copied into the Bierly application and an interference was declared October 31, 1949.

Subsequent proceedings before the Primary Examiner are epitomized in the decision of the Board of Interference Examiners as follows:

"* * * Bierly in the motion period moved to add proposed counts 2, 3 and 4 corresponding to claims 2, 3, and 4 of the Happoldt patent. Happoldt opposed this motion and also moved to dissolve on the ground that Bierly had no right to make the count. The Primary Examiner initially granted the motion to dissolve and denied the motion to add proposed counts but on reconsideration, in view of the citation of certain patents, publications and pertinent law and the filing of affidavits in behalf of the party Bierly, denied the motion to dissolve, and added the proposed counts."

Count 1 of the interference, which is illustrative, reads:

"1. A composition of matter comprising at least 50 per cent by weight of solid polythene, 20 per cent to 35 per cent by weight of antimony trioxide and at least 6 per cent by weight of a solid chlorinated hydrocarbon, the said chlorinated hydrocarbon containing from 55 per cent to 80 per cent by weight of chlorine; *the combined*

weight of antimony trioxide and the said solid chlorinated hydrocarbon being present in an amount of between 38 per cent to 50 per cent by weight based on the combined weight of polythene, antimony trioxide and chlorinated hydrocarbon present in said composition and said proportions of polythene, antimony trioxide and chlorinated hydrocarbon being based on the combined weight of polythene, antimony trioxide and chlorinated hydrocarbon present in said composition." (Italics ours).

For reasons hereinafter appearing we quote claim 2 as it originally appeared in the Happoldt application:

"2. A composition as claimed in Claim 1, wherein the inflammable polymeric thermoplastic material comprises at least 50% of the composition".[1]

We have italicized the clause in claim 1, the subject matter of which constitutes the only issue before us.

There was another issue before the board, it being whether the party Bierly's specification disclosed the elements of antimony trioxide, one· of the three basic elements in the claims. Only antimony oxide was named in the specification. The Primary Examiner at first ruled that antimony trioxide was not disclosed, but upon reconsideration held, upon the showing made, that Bierly "has established that before and at the time of filing of the Bierly application, antimony oxide, in the absence of any other limitations as to the oxygen, was generally understood by those skilled in the art to mean antimony trioxide."

The board approved the latter ruling and no appeal has been taken from its holding in that respect.

As to disclosure of the limitation which we have italicized in the count as quoted. *supra*, the Primary Examiner held the subject matter of it to be disclosed in the Bierly specification, and with that the board

---

1. Since count 2, as originally drawn, was dependent on count 1, it was agreed by counsel for the respective parties that it might be considered as though it read: "2. A composition of matter comprising at least 50% of a polymeric thermo-
plastic material and a minor proportion of flameproofing constituents comprising a highly chlorinated high molecular weight organic material and an inorganic flame-retardant substance."

disagreed. The appeal relates to that single phase of the controversy.

The board, referring to the question of disclosure broadly, said: "There is but one question for disposition * * * but it has become rather involved." This seems to us to be something of an understatement even when limited to the single factor which we are called upon to consider. The involvement is possibly due in part to the technical character of the ingredients which enter into the composition of matter defined in the counts, but we think it is more particularly due to the somewhat complicated method used in defining the proportions of such ingredients. For convenience we repeat the limitation in the count which constitutes the issue:

"* * * the combined weight of antimony trioxide and the said solid chlorinated hydrocarbon being present in an amount of between 38 per cent to 50 per cent by weight based on the combined weight of polythene, antimony and chlorinated hydrocarbon present in said composition * * *."

In the brief for appellee there is a concise analysis of the limitation, which we reproduce, the italics being quoted:

"* * * These proportions are all expressly based on *the combined weight of the three components,* any optional components being disregarded. The proportions called for are:

"Polythene—at least 50 per cent by weight;

Antimony trioxide—20 per cent to 35 per cent by weight;

Solid chlorinated hydrocarbon—at least 6 per cent by weight;

*Combined* weight of antimony trioxide and solid chlorinated hydrocarbon—38 per cent to 50 per cent by weight."

The brief continues:

"The issue turns on whether Bierly disclosed the use of antimony trioxide within the range of 20% to 35% by weight and the use of a combined weight of antimony trioxide and solid chlorinated hydrocarbon, based, of course, on the combined weight of all three specified components of the composition, within the range of 38% to 50%. It is Happoldt's position as well as that in the Board's decision that Bierly fails to disclose *clearly* either the use of as much as 20% of antimony trioxide or as much as 38% combined weight of antimony trioxide and solid chlorinated hydrocarbon." (Italics quoted.)

As a condition precedent to obtaining a patent, it is provided by 35 U.S.C. § 33, (now § 112) R.S. 4888, that there shall be filed in the Patent Office "a written description of [the claimed invention] and of the manner and process of making, constructing, compounding, and using it, in such *full, clear, concise, and exact terms* as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same * * *." (Italics ours.)

In the instant case, appellant Bierly seeks a finding of priority as to the several counts which already have been patented to the party Happoldt, Jr. (inadvertently, if the interference was properly declared, since Bierly's application was copending with that of Happoldt, Jr.) to the end that he also may receive a patent upon them.

The counts define a composition of matter such as the compositions rendered patentable by 35 U.S.C. § 31, (now § 101) R.S. 4886. It was incumbent upon Bierly therefore to so describe his claimed invention in his specification as to enable any person skilled in the art to make or compound such composition of matter.

More accurately, since Bierly's specification was prepared and filed in the Patent Office more than seven months before the Happoldt application was filed and more than fifteen months prior to the issuance of the Happoldt patent from which Bierly obtained his information of the counts, it must be found that he had anticipated the counts with a description in "full, clear, concise and exact terms."

It is well settled, of course, that one who extracts claims from an issued patent for the purpose of securing an inter-

ference must show clear prior disclosure, Brand v. Thomas, 96 F.2d 301, 25 C.C. P.A., Patents, 1053, and in such a case any doubt as to an applicant's right to make the copied claims must be resolved against him. See Jorgensen v. Kingsland, Commissioner of Patents, D.C., 83 F.Supp. 319, citing Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606, 608, wherein the Court of Appeals of the District of Columbia (now the U. S. Circuit Court of Appeals, D.C. Circuit), our immediate predecessor in this jurisdiction, after quoting the foregoing statutory language said:

"* * * Shepherd [from whose patent the claims in issue had been copied by Lindley] complied with this statute. Lindley did not. His amendment [adding the claims to his application] was inspired by knowledge of what Shepherd had accomplished, and all doubts as to his right to appropriate what has been granted Shepherd should be resolved against him. It is not enough that he may have had a conception of the invention he seeks to appropriate. His application must disclose it. Herzog v. N. Y. Tel. Co., C.C., 172 F. 425; Id., 2 Cir., 176 F. 349; Hestonville v. McDuffee, 3 Cir., 185 F. 798."

In the instant case we are met at the threshold with a situation which evokes an inquiry as to whether the specification of Bierly's application does furnish a description of the subject matter of the counts and the manner and process of making or compounding same in such full, clear, concise and exact terms as to enable any person skilled in the art of producing flame-resistant or flame retarding compositions of the kind described to make or compound such compositions.

■ We must assume—and we entertain no doubt as to the correctness of the assumption—that the respective tribunals of the Patent Office who passed upon the issue here involved, are experts in the described art, and *we find them in disagreement.*

When the experts disagree as to a highly technical question such as that here in-

volved, it is difficult for the layman to avoid some bewilderment.

It seems to be virtually agreed that Bierly is dependent for disclosure upon the following paragraph in his specification, which the board characterized as a "controversial paragraph":

"In general, for a desirably flameproofed plastic material which may suitably be molded as by injection molding, the flameproofing material should be added to the plastic material in an amount equal to not more than 50% of the entire plastic material and is preferably added in an amount equal to at least 15% of the final flame-resistant plastic composition."

The Primary Examiner was of opinion that the disclosure was sufficient to meet the statutory requirements and sturdily defended his view in two decisions. We quote the following from his decision of October 19, 1950, rendered upon Happoldt's petition for reconsideration of his first decision denying Happoldt's motion to dissolve and adding counts 2, 3, and 4:

"Examiner has carefully considered party Happoldt's argument that the Bierly specification does not disclose any composition within the proportion range recited in the interference count: Happoldt contends that the Bierly specification does not disclose the upper limit of 50% for the combined weight of chlorinated hydrocarbon and antimony trioxide based on the combined weight of chlorinated hydrocarbon, polythene and antimony trioxide.

"However, examiner still finds basis for this upper limit of 50% in the Bierly specification. Claim 2 indicates that 'up to 50%' of the entire composition (i. e. the three component composition) may be the combined fire retardant substances. This is obviously a teaching that more than 33% by weight of the three component composition may be the combined fire retardant substances. Also Bierly's specification page 8, lines 12 and 13, states that the flameproofing material should be added in an amount equal to not more than 50% of the

entire plastic material. In view of original claim 2, wherein it is indicated that an upper limit of the order of 50% of the flame retardant material based on the weight of the 3 component composition is to be covered, it appears obvious that applicant's statement on page 8 that not more than 50% of the entire plastic material may be used is a teaching that the final flameproofing composition may contain not more than 50% weight of the fire retardant components. A minor proportion covers 'up to 50%' so there is nothing incongruous seen in an interpretation of 'up to 50%' with respect to the range of flameproofing material in original claim 2."

The following are excerpts from the decision of the Board of Interference Examiners:

"Original claim 2, it is considered, furnishes no basis for a positive conclusion as to a combined proportion of fire retardant substances up to 50%. The claim is simply negative as to the fire retardant content. The Examiner reasoned that since original claim 2 is dependent on original claim 1 which recites a three component composition one of which is the polymeric thermoplastic material specified in original claim 2 to be at least 50% and the other two are fire retardant components, it follows the latter two could be present up to 50%. However, original claim 1 is not limited to a three component composition. The composition was originally described in claim 1 as 'comprising' not *consisting of* and thereby the presence of other ingredients is not excluded. Such other ingredients are optionally provided for on pp. 7 and 8 of the specification; namely 10% more or less of the final composition can be plasticizer and up to 5% lubricant. Thus, all that is clear from the two original claims as regards the fire retardant components is that they are in some minor proportion as set forth in claim 1 and the meaning of minor, since it is inherently indefinite, may be sought for if desired in the specification. For our purpose which concerns the counts it is apparent that since percentage proportions of fire retardant components are not positively recited or clearly derivable *without speculation on the meaning of original claims 1 and 2 and since ingredients other than the three named may be present,* the said means do not stand in themselves as a clear exposition of a definite upper limit of the fire retardant components coming to within the range of the counts." (Italics ours).

The decision then states in substance that of the thirteen original claims submitted by Bierly only one of them, claim 8 [2], positively and clearly sets forth the proportion range of flameproofing ingredients, namely, "between 15% and 30% of the total composition;" that the range so named obviously is "much below the minimum recited in the counts" from which fact "caution appears warranted in inferring *by construction* (Italics ours) a materially higher range in claim 2;" that paragraph 8 permits of more than one interpretation; that the one adopted by the Primary Examiner "appears the less plausible;" that, except in the instance here involved, Bierly used clear language to indicate the final flame resistant composition (giving illustrations by quoting from or paraphrasing parts of the Bierly specification), and asserts:

"In view of the care otherwise exercised in the choice of language by Bierly to designate the final flame-resistant plastic composition it seems doubtful that he meant the same thing by 'entire plastic material'. Logically, had Bierly in the said paragraph meant to assert the addition of flameproofing material in an amount equal to not more than 50% of the final composition

---

2. Claim 8 like claim 2 is dependent upon claim 1 and in our opinion may be considered as though it read:
"8. A composition of matter comprising at least 50% of a polymeric thermoplastic material and flame-proofing ingredients comprising between 15% and 30% of the total composition."

he would simply have left out the words 'of the entire plastic material.' Such would have been in accordance with the meticulousness used otherwise to designate the final composition.

"In the circumstances, having used the designation 'entire plastic material' it seems at least as reasonable that something other than the final composition is meant. Such could logically be the plastic material excluding the flameproofing material. On page 5 of his specification Bierly mentions some fifteen polymeric materials of the thermoplastic type that could be used either alone or copolymerized with other thermoplastic substances. In addition, as set forth on page 6, plasticizers (as well as lubricants) may be added along with the flameproofing material. Hence there are enough types of material which enter into the plastic content exclusive of the separately designated flameproofing material to justify the term 'entire plastic composition'. On the basis of such at least equally logical interpretation, the flameproofing material would be no more than half the plastic material or no more than one-third the final composition. Moreover, it is noteworthy that this interpretation finds extensive support in the examples. There are thirteen examples in the Bierly specification and in none of them does the flameproofing material exceed $33\frac{1}{3}\%$ of the final composition. Most of them specify substantially less than $33\frac{1}{3}\%$

and in Example 8, the only one pertaining to the ingredients of the counts, the flameproofing material is only about 23% of the final composition."

In view of the foregoing, we think it perfectly obvious that, to say the very least of it, an extreme degree of doubt exists respecting the sufficiency of the Bierly disclosure. Sufficiency of disclosure could only be awarded him by interpreting a somewhat hazy paragraph of his specification in a manner which those skilled in the art might well regard as untenable since a different interpretation seems to be more in harmony with the phraseology involved.

We think doubt as to sufficiency of disclosure should be resolved against one who copies claims for the purpose of interference in all instances, and most emphatically so in cases where the claims are copied from an existing patent.

The discussions by the tribunals of the Patent Office and by counsel for the respective parties in this case were quite elaborate, numerous angles being presented and a number of judicial decisions cited. We have confined our discussion to what obviously is the fundamental question at issue. We have studied the cited cases but, under the facts appearing, deem it unnecessary to discuss them. The case of Arness v. Franks, 138 F.2d 213, 31 C.C.P.A., Patents, 737, is regarded as apposite.

The decision of the Board of Interference Examiners is affirmed.

Affirmed.