ENGEL *v.* SINCLAIR.

---

PATENTS; INTERFERENCE; CLAIMS AND SPECIFICATIONS; ESTOPPEL.

1. Where a party copies a claim of a patent for the purpose of interference, it must be read in the light of the disclosure of the patent; but where a patentee once presents his claim in one form, and the Patent Office rejects it with his acquiescence, he is estopped to claim the benefit of his rejected claim, or such a construction of his amended claim as would be equivalent to the rejected claim; it makes no difference whether the rejected claim be broader or narrower than the one allowed.

2. An applicant for a patent for an invention for an improvement in water tube boilers, who shows in the application two circular rows merged into one, is entitled to make a claim for "a plain drum having parallel rows of separate circular tube landings formed partially above and partially below the drum face," as a semi-circular landing clearly anticipates one circular in form.

No. 602.  Patent Appeals.  Submitted November 19, 1909.  Decided December 13, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Reversed.*

The COURT. in the opinion stated the facts as follows:

This is an appeal from the decision of the Commissioner of Patents, in an interference proceeding, awarding priority of invention to appellees, Robert Sinclair, Alexander Sinclair, George Sinclair, James C. Sinclair, and William Sinclair, as executors and trustees of George Sinclair, deceased, on the ground that appellant, Godfrey Engel, has no right to make the claims of the issue, which read as follows:

"1. In a water tube boiler, a plain drum having separate tube landings formed therein, in parallel rows, and so arranged as to leave sufficient space between the adjacent transverse rows for the insertion or withdrawal of the tubes from either side of a row without the use of manholes, as described.

"2. In a water tube boiler, a plain drum having parallel rows of separate circular tube landings formed partially above and partially below the drum face, and so arranged as to leave sufficient space between the adjacent transverse rows for the insertion or withdrawal of the tubes from either side of a row without the use of manholes, as described."

Engel's application was filed September 8th, 1905, while the Sinclair application was not filed until October 26th, 1906. Through inadvertence, however, a patent was issued to Sinclair on June 4th, 1907, whereupon Engel copied the claims here involved and an interference was declared. It developed that

the dates set up by Sinclair in his preliminary statement were subsequent to Engel's filing date, hence Sinclair, in accordance with the prevailing Office practice, was notified to show cause why judgment should not be rendered against him. Thereupon Sinclair moved to dissolve the interference on the ground that Engel has no right to make the claims of the issue because (1) claim 1 calls for the "insertion or withdrawal of the tubes from *either side* of a row," whereas Engel's drawings show that the tubes are arranged in groups of two parallel rows, and that any individual tube can be inserted or withdrawn from one side only; and (2) claim 2 calls for separate *circular tube* landings, whereas Engel shows tubes arranged in groups of parallel rows, two tubes resting on each separate oblong-shaped landing; (3) Engel does not show "a separate landing for each separate tube."

The Primary Examiner denied this motion, and ruled that the Engel structure clearly shows the features called for by the claims of the issue. The case was then passed upon by the Examiner of Interferences, who sustained the view of the Primary Examiner, and awarded priority of invention to Engel. On appeal to the Examiners-in-Chief the decision of the Examiner of Interferences was affirmed, one member dissenting. Whereupon an appeal was prosecuted to the Commissioner, who ruled that appellant has no right to make the claims of the issue and therefore awarded priority to appellees. This appeal followed.

*Mr. J. Nota McGill* for the appellant.

*Mr. Hubert Howson* and *Mr. William Abbe* for the appellees.

Mr. Justice Robb delivered the opinion of the Court:

The object of the invention, as stated in the Sinclair specification, is "to improve the construction of water tube boilers of the type having upper and lower cylindrical drums connected

together by rows of straight water tubes, so that whilst the tubes can be readily assembled or removed for renewal or repair, without headroom in the boiler house above or beyond the upper drums, the known advantages of cylindrical water drums are obtained, such as that, there being no portion of the drum in the form of a flat tube plate, there is less liability to buckling, and consequent damage to the tube fixings, and the drums do not require to be internally stayed to give them the necessary strength."

Appellee's claims as originally drawn referred to *"a drum having separate landings for each water tube."* The claims as thus drawn were rejected on certain references. Whereupon appellees asked for a reconsideration of their claim, saying: "The third paragraph of our specification shows that we are familiar with the first three references, while Meehan (the fourth reference) merely discloses the admittedly old feature of separate landings for each water tube.

"The object of my invention is to provide ready means for the insertion or removal of the water tubes, without corrugating the drum head. * * * I accomplish my aim by providing additional space room between each row of tubes, as pointed out in the claims. This is not disclosed in the patents cited." In response to this communication the Examiner disallowed the claims, saying: "The drums with the separate landings being old, as shown by Thurstensen, no invention is required to space the tubes far enough apart in one row to permit access to the tubes of another row, as in Garbe, for instance." Whereupon appellees amended their specification, and changed the claims to their present form. They now contend that, notwithstanding the claims as originally drawn and rejected by the Patent Office were clearly limited to a structure containing separate landings for each water tube, the amended claims should be given the same interpretation as the rejected claims.

It is familiar rule, many times affirmed by the Supreme Court of the United States, that, a patentee having once presented his claim in one form and the Patent Office having rejected it with his acquiescence, he is estopped to claim the benefit of his re-

jected claim, or such a construction of his amended claim as would be equivalent to the rejected claim, and that it makes no difference whether the rejected claim be broader or narrower than the one allowed. *Morgan Envelope Co.* v. *Albany Perforated Wrapping Paper Co.* 152 U. S. 425, 38 L. ed. 500, 14 Sup. Ct. Rep. 627 ; *United States Repair & Guarantee Co.* v. *Assyrian Asphalt Co.* 183 U. S. 591, 46 L. ed. 342, 22 Sup. Ct. Rep. 87. The latter case was a suit for infringement of a patent to one Perkins, designed to produce a method whereby the repairing of asphalt pavements might be quickly, cheaply, and neatly accomplished. The claims as finally drawn covered a method consisting *"in subjecting the spot to be repaired to heat,* adding new material, and smoothing and burnishing substantially as described." To avoid an anticipatory patent it was contended, in behalf of the Perkins patent, that the method therein described was "characterized by a new and useful way of applying heat to the pavement, to wit, by *sending a flame blast into direct contact with the pavement surface."* It was held that the patentee, having voluntarily abandoned the claim for a method limited to the use of "a blast of heat," was estopped to claim such a restriction in the broader claim allowed him. In other words, the doctrine thus announced amounts to this: a patentee may not blow hot and then cold, as the exigencies of his situation may demand.

It is true, as stated by the Commissioner, that where a party copies a claim of a patent for the purpose of interference it must be read in the light of the disclosure of the patent. But this rule is subject to the limitation imposed by the rule above stated. Manifestly, what has gone before must be considered in determining the scope and meaning of the counts of this interference. Appellees are not here entitled to an interpretation which this patent standing alone would not sustain.

It remains to apply the above rules to the facts of this case. Sinclair originally claimed a construction specifically limited to separate tube landings for each water tube. He voluntarily amended his claim so that they now refer to "a plain drum having separate tube landings formed therein." The Examiner of Interferences, in his decision, said: "If Sinclair had desired

to limit these claims when he presented them in his application, in the respects in which he now contends they should be limited, it would have been a very easy matter for him to have done so at that time. His failure to incorporate in his claims any words suggesting such limitations must be taken as conclusive evidence that he did not intend, when his patent was taken out, that it should be so limited." In the majority opinion of the Board of Examiners-in-Chief it is stated: "Our conclusion that separate tube landings are, according to the plain meaning of the language, separate landings which are also tube landings, and not landings sustaining each a single tube. The landings are first of all tube landings, and after that they are separate landings for tubes. If we were to sustain the contention of counsel for Sinclair we would have to read into the issue a statement to the effect that each landing is connected with only a single tube, since the language employed in the issue, as we view it, describes no construction of this kind." In the circumstances of the case, we have no hesitancy in adopting this view of the claims. The only object in having these separate landings was to leave a space between each transverse row, thereby permitting the insertion or withdrawal from the side of the boiler of the tubes in adjacent rows. This object is quite as well accomplished by appellant's construction as by that of appellees, for his tubes are mounted on separate landings, are formed in a plain drum, in parallel rows, and with intervening spaces between the rows for landings "for the insertion or withdrawal of the tubes from either side of a row." This construction, we think, fairly responds to the claims of the issue.

One point remains. It is urged that since in count 2 the landings are stated to be circular in form, that appellant cannot prevail as to this count, since two circular landings merged into one are shown in his application. We agree with the Primary Examiner and the Examiner of Interferences that appellant is entitled to make this claim. The landings originally shown by him contained semicircular ends, that is, they conformed on either end to the shope of the tubes, which was circular. If two tubes are to be placed on one landing,—and we have held the

counts susceptible of this construction,—necessarily the landing for each tube cannot be exactly circular in form. However, there is nothing in the record to indicate that it makes the slightest difference whether these landings are circular, semicircular, or some other shape. In other words, a semicircular landing clearly anticipates one circular in form.

The decision of the Commissioner must be reversed, and the clerk of this court will certify this opinion as by law required.

*Reversed.*