## CHAMBERLIN v. KADOW (two cases).

## KADOW v. CHAMBERLIN.

(Court of Appeals of District of Columbia. Submitted October 13, 1923. Decided April 7, 1924.)

Nos. 1583–1585.

1. **Patents ☞106(1)—In interference proceedings, involving machine for manufacture of electric light globes, senior party held not entitled to copy junior party's claims.**

An interference proceedings between inventors of machine for automatic manufacture of electric light globes, claims involving an arrest of gathering mechanism before return to position on moving support *held* to describe and require an actual stopping of mechanism, and were not embraced under claim of senior party for gathering mechanism, which, though retarded at moment of gathering, is never stationary.

2. **Patents ☞91(3)—Award should be in favor of prior inventor, regardless of hardship.**

Where one party is clearly prior inventor, award should be in his favor, regardless of possible hardship; but an inventor should not be deprived of his reward, in absence of clear showing that another party preceded him, in a legal sense, as to same invention.

3. **Patents ☞106(2)—While claim will be given broadest interpretation, apt limitation will not be disregarded.**

While, in an interference proceeding, a claim will be given the broadest interpretation its language reasonably will permit, an apt limitation, adopted by one party, will not be disregarded to his disadvantage.

Appeal from the Commissioner of Patents.

Interference proceeding between Benjamin D. Chamberlin and August Kadow. From an award of priority as to certain counts in favor of one party, and an award as to other counts in favor of the other party, both parties appeal. Reversed in part, and affirmed in part.

Vernon M. Dorsey, of Washington, D. C., for Chamberlin.

Otto R. Barnett and Percival H. Truman, both of Chicago, Ill., for Kadow.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Presiding Judge of United States Court of Customs Appeals.

ROBB, Associate Justice. These are cross-appeals in an interference proceeding, in which priority of invention was awarded Chamberlin as to certain counts, while other counts were awarded Kadow.

[1] It was the aim of each party to design a machine for the automatic manufacture of hollow glass articles, and particularly of electric light bulbs. Prior thereto glass blowing had been accomplished solely through manual operations. The glass was melted, a highly skilled workman took a gathering iron (consisting of a hollow iron pipe several feet in length, with one end heated), dipped the heated end into the molten glass, and, by skillful manipulation, caused a sufficient "gob" or gather to adhere. It was necessary carefully to manipulate the iron after withdrawal to prevent the dropping of the gather. In this way the workman would carry the gather to a hard, flat surface,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

called a "marver." By rotation of the iron the gather would be rolled over this surface and roughly shaped. In addition, the outer surface of the gather would be somewhat chilled, and the gather itself rendered less likely to drop off the iron. A workman, at the proper time, would blow through the blowpipe and form the initial chamber in the gathered mass. The elongation and further shaping of the mass would be secured through swinging and the blowing of additional air through the blowpipe. It will be appreciated at once that the accomplishment of these steps automatically was a very great undertaking.

[2] That Kadow's machine has solved the problem may not be doubted, in view of its great commercial success. It constitutes a definite, practical, and extremely valuable contribution to the art. The utility of the Chamberlin machine, on the other hand, is theoretical. We say this because it does not appear to have been used in the manufacture of electric light bulbs, although Chamberlin's assignee has used a machine involving some of the features of his device, but requiring part of the work to be performed manually. Of course, if it clearly appears that one party is the prior inventor, the award should be in his favor, regardless of possible or apparent hardship. Having in mind, however, that the real object of the patent law is to benefit the public by rewarding those who give to it useful inventions, it is apparent that a party who has made such an invention ought not to be deprived of his reward, in the absence of a clear showing that another party preceded him in the legal sense as to the same invention. In other words, theory should not displace fact.

Coming, now, to the machines of the two parties, in so far as here involved, Kadow shows a vertical central column, about which is mounted a so-called rotating drum or spider. Mounted upon this drum, and pivoted on the same center, but so mounted as to be capable of being swung about its pivot independently of the drum, is a glass-gathering mechanism, which includes means capable of sliding back and forth radially of the rotating drum, so that it can be slid into and out of the adjacent glass furnace. When the gathering device slides forward through the opening into the furnace and into the molten glass, this device remains stationary while the required amount of glass is being sucked into the chamber at the end of the gathering device. After this chamber has been sucked full of glass, the gathering device slides back radially of the drum and into normal position, when it is again made to rotate with the drum. In his application Kadow asked for and was allowed certain claims, directed to the peculiar characteristics and functions of the combination just described. Claim No. 31 is typical of this group (claims Nos. 31 to 41, inclusive, 43, 58, 59, and 60), and is here reproduced, as follows:

"31. The combination of a moving support, of gathering mechanism carried thereby, means for arresting the travel of said gathering mechanism with said support during the continuance of the movement of said support, and means for returning the gathering mechanism to a position on said support occupied by it before its travel was so arrested."

Before analyzing this count, we briefly will describe the corresponding parts of the Chamberlin machine. He shows a constantly rotating

drum, upon the top of which is pivoted an iron blowpipe. As the drum approaches the glass-gathering pot, the blowpipe is swung horizontally on its vertical pivot, so that the forward end of the blowpipe is pointed toward the mouth of the glass pot. The rotation of the drum carries the forward end of the blowpipe into the mouth of the pot. The blowpipe, being pivoted to the drum, is never stationary, although motion is retarded at the moment the end is dipped into the molten glass. Chamberlin, it will be observed, uses an ordinary blowpipe, to the end of which the gather is supposed to adhere, while Kadow has a mold, into which a definite amount of glass is sucked.

Upon the declaration of the interference, Kadow contended that the limitations in the group of claims to which we have referred accurately applied to his machine, but that they did not apply to the Chamberlin machine, and hence that the interference should be dissolved as to those claims. The Primary Examiner, highly skilled in this art, sustained Kadow's contention, pointing out that the claims originated with Kadow, that the term "arrest," as used by him, means to stop suddenly, and that, as so used, it inaccurately describes Chamberlin's gatherer. The other tribunals of the Patent Office disagreed with the Primary Examiner on this point, but their reasoning does not appeal to us. The Examiner of Interferences took the position that the slowing down of the Chamberlin blowpipe "corresponds to Kadow's 'arrest and resume' mechanism." The Examiners in Chief apparently attributed no importance to the fact that these claims originated with Kadow, and ruled "that the Examiner unduly narrowed the meaning of the word 'arrest.'" The Assistant Commissioner also disposed of this point in a summary way and affirmed the Board.

[3] While it is familiar law that in an interference proceeding a claim will be given the broadest interpretation its language reasonably will permit, it is equally clear that an apt limitation adopted by the party will not be disregarded to his disadvantage. Kadow's mechanism, as we have seen, is materially different from that of Chamberlin. Before these claims were drawn, Kadow knew exactly how his machine operated; in other words, that his gathering mechanism actually stopped "during the continuance of the movement of said support," and that it remained stationary until the chamber at the end of the gathering mechanism was sucked full of molten glass, when it again assumed the position on the support "occupied by it before its travel was so arrested." Thus it appears that these claims require the presence of means for arresting the travel of the gathering mechanism, independently of the movement of the support, and means for returning this mechanism to the position on the support it occupied before its travel was so arrested. Giving the language of these claims its natural meaning, and particularly the meaning clearly intended by Kadow, an actual stopping is required. And this is not an arbitrary limitation. The actual arresting of Kadow's gatherer evidently was desired and necessary. Certainly he has provided it. Such arrested motion, however, is not necessary to Chamberlin, because one dip of his blowpipe would be as good as a dozen dips. In other words, it would serve no useful purpose to permit Chamberlin's blowpipe to

remain in the molten glass an appreciable length of time. We therefore rule that Chamberlin may not make the claims containing this limitation.

Claims 50, 51, 57, 61, and 62 call for a "variation in the angular movement of the gatherer," or means for "temporarily retarding the motion of the gatherer." As to these claims, we agree with the Patent Office that the limitation is not sufficiently specific to prevent Chamberlin from making them.

Kadow withdraws his appeal as to claims 1, 2, 13, 15, 16, 24, 26, 29, 45, and 53. Claims 7, 8, 9, 10, 11, 27, 28, 48, 49, and 52, or the so-called swinging counts, are directed to the feature of oscillating the spindle to elongate the blank. The difference in dates awarded the two parties by the lower tribunals of the Patent Office was very slight. The Assistant Commissioner found that the date accorded Kadow as to these particular claims was earlier than any date to which Chamberlin was entitled, and we agree with that finding for the reasons he has stated. The testimony was taken many years after the occurrences to which it relates, and, while the witness upon whom Chamberlin relies apparently was conscientious and endeavoring to give his best recollection, we agree with the Assistant Commissioner that in a complicated device of this sort something more than a general idea of means should be disclosed. It was one thing to have the idea of a swinging arm, and quite another to embody that idea in concrete form.

It results that the decision is reversed as to claims 31 to 41, inclusive, 43, 58, 59, and 60, but affirmed as to all the other claims.

Reversed in part, and affirmed in part.