**BENEDEK v. COE, Com'r of Patents.**

No. 1182.

District Court of the United States for the District of Columbia.

June 6, 1940.

Charles W. Hills, Jr., and Carlton Hill, both of Chicago, Ill. (Donald J. Simpson, of Chicago, Ill., and Thomas J. MacKavanagh, of Washington, D. C., of counsel), for plaintiff.

W. W. Cochran, of Washington, D. C. (Joseph L. Kelly, of Washington, D. C., of counsel), for defendant.

PINE, Justice.

This action is brought under Sec. 4915, R.S., 35 U.S.C.A. § 63.

The complaint prays that this Court authorize defendant to issue to plaintiff a patent with claims that have been rejected by the Patent Office tribunals.

The rejected claims are sixteen* in number and are directed to structural features of a high pressure fluid pump shown and described in plaintiff's application for patent, S. No. 694,179, which was filed in the Patent Office on October 18, 1933. The claims have been grouped by the parties in the following order for consideration.

### Group I
#### (Claims 22, 23 and 31)

As to these claims the parties have stipulated that Claim 23 will stand or fall depending on the ruling as to Claim 22[1] and that Claim 31 will stand if Claim 22 is held to be patentable.

For the patentability of these claims plaintiff relies on the means recited for eliminating the destructive whipping of the drive shaft and pintle and barrel caused by insufficient support of the driving head. This is accomplished by "means *independent* of the pintle and barrel for rotatably supporting the head" (Claim 22). The independent supporting means employed consists in a bearing interposed between the driving head and an outer casing, which bearing is in addition to any other support which the drive shaft may have.

The French patent No. 745,216 is principally relied on by the Patent Office for anticipating these claims. This patent discloses a pump of the type described and illustrated in plaintiff's application, but it does not have an independent support for the driving head and the end of the pintle adjacent to the driving head which can perform the function of eliminating destructive whipping of the drive shaft and pintle and barrel; nor does the French patent, or any other reference cited by the Patent Office, suggest such an independent support. Plaintiff's independent support undoubtedly performs a useful function and such a support or its equivalent is not disclosed or suggested by the prior structures. This is apart from the proposition, now conceded by plaintiff, that there is no patentability in the fact that in the French patent the drive shaft is inserted in a cavity in the pintle, whereas in this application the pintle is inserted in a cavity in the driving head.

It is my opinion that Claim 22, and Claims 23 and 31 each patentably distinguish over the prior structures cited by the Patent Office and that these claims should be granted.

### Group II
#### (Claims 28 and 29)

The parties have stipulated that of the claims in this group Claim 29 will stand or fall with Claim 28.[2]

---

* Claims 24 and 32 have been withdrawn by stipulation of the parties.

[1] Claim 22 reads: "In a rotary radial piston pump or motor of the character described having a valve pintle supported at one end, a piston carrying barrel rotatably mounted on the pintle and in valving cooperation therewith, and said pintle having a free end portion protruding beyond the barrel at the end opposite the pintle support, a driving head separate from the barrel, means independent of the pintle and barrel for rotatably supporting the head and for constraining the head from radial and axial loading of the barrel by the driving head, said driving head having an axial bore coaxial with the pintle and opening theretoward and receiving the said protruding end of the pintle, pilot bearing means for supporting the protruding pintle end in said bore for relative rotation with respect to the head and for resisting deflection of the pintle, means flexibly connecting the driving head and barrel, and impeller means carried by said driving head."

[2] Claim 28 reads: "In a radial piston pump or motor of the character described, including a rotatable barrel, piston assemblages carried thereby, an annular ex-

The Thoma patent, No. 1,656,544, cited against these claims, shows a structure wherein inner and outer reactance members are integrally connected and appear to perform the same function as the members involved in these claims. The only structural difference between the Thoma patent and the claims in suit is that in the Thoma patent the reactance members are connected, whereas in the claims in suit they are independent of each other. Separating into two elements that which was originally one, where the function and result accomplished are the same, does not involve invention. Barber v. Otis Motor Sales Co., 2 Cir., 240 F. 723; Eames v. Worcester Polytechnic Institute, 6 Cir., 123 F. 67, 60 C.C.A. 37; D'Arcy v. Staples & Hanford Co., 6 Cir., 161 F. 733.

Also, the Carey patent, No. 1,325,434, has an inner floating reactance member which teaches the floating inner reactance member claimed by plaintiff.

I therefore am of the opinion that Claims 28 and 29 are not patentable in the light of the structures disclosed by the Thoma and Carey patents.

### Group V—One Claim Only.
#### (Claim 30)

■ This claim[3] relates to the arrangement of the construction so that the inner and outer rotatable reactance members are carried axially along with the pistons and cylinder barrel whenever there is any axial movement of barrel.

This does not appear to be patentable over the French patent, supra. There is a clearance between the reactance members and associated casing of the French patent. If the barrel shifts axially on the pintle the pistons shift with it. There being a relatively rigid connection between the pistons and the reactance members, the reactance members must be carried axially along with the pistons and cylinder barrel whenever there is any movement of the barrel.

In my opinion the Patent Office was correct in rejecting this claim as not patentable over the French patent cited.

### Group IV
#### (Claims 40, 41 and 43)

■ ■ The parties have agreed that Claims 40 and 41 will stand or fall with Claim 43.[4]

---

ternal reactance member and an annular internal reactance member for driving the piston assemblages inwardly and outwardly on their strokes respectively, and rotatable elements carried by and respective to the piston assemblages, each rotatable element having an axis of rotation extending transversely of the path of rotation and fixed relative to the piston with which associated and each rotatable element being in rolling engagement at diametrically opposite portions of its periphery respectively with the reactance members concurrently for operation of the piston assemblages thereby, means mounting the external reactance member for rotation both independently of and relative to the barrel, and said internal reactance member being floatingly supported by said elements for rotation independently of the barrel and of the external reactance member, the reactance members thereby being rotatable in opposite directions at the same circumferential velocity while remaining in firm rolling engagement with said diametrically opposite peripheral portions of each rotatable element concurrently."

3 Claim 30 reads: "In a rotary radial piston pump or motor of the character described, including a rotary barrel and radial pistons carried thereby, means mounting said barrel for limited axial shifting movement a rotatable external reactance member cooperable with the pistons for driving the pistons on one stroke, as internal rotatable reactance member cooperating with the pistons for driving the pistons on the opposite stroke, means respective to the members for holding the members in fixed position with respect to the pistons axially of the barrel, and means respective to the members mounting said members for rotation and axial shifting with the barrel, whereby upon axial movement of the barrel the same cooperating relation between the pistons and reactance members is maintained."

4 Claim 43 reads: "A fluid pressure pump or motor including a cylinder body, a fluid distributing valve, said cylinder body and said fluid distributing valve being mounted for rotation relatively to one another, cylinders in said cylinder body arranged to communicate with said fluid distributing valve, pistons arranged to reciprocate in said cylinders, means for reciprocating said pistons, and preloaded ball bearings mounted between said cylinder body and said distributing valve, the diametral clearances of said preloaded ball bearings being reduced to substantially zero, the clearance between said cylinder body and said fluid distributing valve being greater than the total diametral clearance of said preloaded ball bearings."

These claims relate to preloaded bearings between the cylinder barrel and the pintle. Claim 43 is identical with Claim 1 of the Ernst patent, No. 2,041,172. The Ernst patent was issued on an application which was filed subsequent to the filing date of plaintiff's application and for that reason is not prior art against plaintiff. This claim was copied for the purpose of provoking an interference between Ernst and plaintiff. The Patent Office refused to declare an interference.

The position of the Patent Office is that plaintiff has not disclosed in his specifications "preloaded" bearings in the sense that the term "preloaded" is used in the Ernst patent.

Ernst states that an object of his invention is to provide a pump or motor "wherein the rotating parts are supported on preloaded ball bearings which serve to place a preliminary load thereon in order to take out most of the elastic deformation thereof" and further on he states that he has provided "preloaded ball bearings which are slightly larger in diameter than the space between their races, the balls being forced into this space in such a manner that the clearance between the races and the balls is substantially zero."

He also illustrates bearings capable of being preloaded in accordance with his construction.

In contrast plaintiff in his original specification states that certain bearings are "preloaded or adjusted" indicating that he was using the terms "preloaded" and "adjusted" synonymously. He says this is accomplished by a set collar or nut shown in the drawings of his application. It does not appear, however, that the adjusting nut could be satisfactorily employed to "preload" the bearings in the manner intended in the Ernst patent.

Plaintiff testified that in his construction the roller bearing was preloaded when pressed into the barrel, but this method is not described in his specification and in fact is contrary to his original specification as above pointed out. In plaintiff's disclosure the bearings are not adapted for preloading in the sense that the diametral clearance of the bearings may be reduced substantially to zero.

I am therefore of the opinion that Claim 43, interpreted in the light of the Ernst patent from which it was taken, does not read on plaintiff's original disclosure, the application disclosing an adjustable ball bearing and not a preloaded ball bearing as defined by Ernst. That this claim shall be interpreted in the light of the Ernst patent would appear to be settled by Podlesak v. McInnerney, 26 App.D.C. 399; Engel v. Sinclair et al., 34 App.D.C. 212; Seymour v. Molyneaux, 49 App.D.C. 216, 263 F. 468; White v. Cottrell, 50 App.D.C. 269, 270 F. 877; Chamberlin v. Kadow, 54 App.D.C. 294, 297 F. 873; McIntyre v. Dodge, 58 App.D.C. 273, 29 F.2d 861.

If the term "preloaded" appearing in Claim 43 is interpreted to mean an adjustment then it is unpatentable by reason of the Prather patent, No. 1,299,777, which shows ball bearings capable of the same adjustment as with plaintiff's structure.

I am therefore of the opinion that Claims 40, 41 and 43 are not patentable.

### Group III
### (Claims 35 to 39, incl.)

The parties have agreed that Claims 36, 37, 38 and 39 will stand or fall with Claim 35.[5]

The claimed invention in this group relates to the requirement that the total diametral clearance between the elements of each bearing assembly be less than the clearance between the barrel and pintle.

There is no patentable difference between this and the Prather patent, supra. Prather shows ball bearing assemblies which are capable of adjustment in the same manner as claimed by plaintiff. Although Prather does not mention this adjustment, he provides the element for adjustment and the amount of adjustment is a matter of choice.

These claims are fully anticipated by the Prather patent.

Counsel will prepare findings of fact and conclusions of law and judgment in accordance with this opinion.

---

5 Claim 35 reads: "In a fluid pressure pump or motor, a fluid distributing valve pintle, a cylinder barrel, said barrel and said pintle being mounted for relative rotation with respect to each other, said barrel having a cylinder in valving cooperation with said pintle, a piston reciprocable in said cylinder, means to reciprocate said piston, anti-friction bearing assemblies mounted between said barrel and said pintle, the total diametral clearance between the elements of each bearing assembly being less than the clearance between said barrel and pintle."