## BIJUR v. RUSHMORE.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. All limitations appearing in the counts of an interference will be

regarded as material to the invention covered by such counts. (Citing *Wilson* v. *Ellis*, 42 App. D. C. 552.)

2. Where the issues of an interference involving the invention of an electric motor for starting internal combustion engines provided with means whereby transmission gearing between the motor and engine was automatically brought into mesh when the motor was started and automatically brought out of mesh upon the engine taking up its own cycle of operations, called for an armature movable with respect to the field and normally displaced and the return of the armature to its normal displacement, it was *held* that the construction by one of the parties of a device having no sliding or axially movable armature did not disclose the invention of the issue and constitute reduction to practice.

No. 1093. Patent Appeals. Submitted March 13, 1917. Decided April 23, 1917.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.　　　*Affirmed.*

The facts are stated in the opinion.

*Mr. Robert S. Blair* for the appellant.

*Mr. George C. Dean* and *Mr. C. W. Fairbank* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The invention applied for by Joseph Bijur and Samuel W. Rushmore is involved in an electric motor for starting an internal combustion engine provided with means whereby transmission gearing between the motor and engine is automatically brought into mesh when the motor is started and automatically brought out of mesh upon the engine's taking up its own cycle of operation.

The issue as originally formulated involves six counts. Thereupon, upon Bijur's motion, six others were added. The interference was dissolved as to three of the latter counts in view of Bijur's patent of May 5, 1914. After testimony was taken by

Bijur, Rushmore made a motion to dissolve the remaining nine counts, and the interference was remanded to the Primary Examiner to consider the pertinency of five of the counts.

The counts left in interference are the following:

"1. An engine starting electric motor comprising a field magnet and an armature axially movable with respect to the field and normally displaced, but adapted to be brought into driving relation with a device to be started thereby, an automatic means for restoring the movable armature to its normal displaced position, said means being dependent upon the increased counter-electromotive force developed when the speed is increased through starting of the device.

"2. An application of the class described comprising, in combination, an engine starting electric motor comprising a field magnet and an armature axially movable with respect to said field and adapted to be brought into driving relation with a device to be started thereby, together with means for restoring the armature to its normal displaced position when the motor has reached a predetermined speed.

"3. In an apparatus of the class described and in combination, an electric starting motor comprising a field having a winding in series with the armature, an armature axially movable in said field and provided with a power-transmitting connection adapted to engage a device to be started thereby, means normally tending axially to displace said armature shaft to disengage said connection in opposition to the attraction of said magnetic field when energized, said displacing means being of such strength relatively to the field as to be overcome by the attraction of the field on the armature when excited by the normal working current and to overcome the attraction of the field upon the armature when the current is reduced by action of the increased counter-electromotive force due to increased speed of the motor when the starting of the device is effected.

"4. An electric starting motor comprising a field magnet and an armature arranged to have considerable axial movement within the field, in combination with means for engaging the motor with the device to be started through the agency of the

axial movement of the armature and to be. actuated by the motor current, and being so arranged that after the device has reached a predetermined speed the resultant decrease in the current passing through the motor will cause the automatic disengagement of the motor from the device."

Bijur filed May 5, 1913, and Rushmore, September 27, 1912.

As stated by the Examiners-in-Chief: "The invention in issue is a device for starting internal combustion engines, the same consisting of an electric motor and gearing connecting the same with the flywheel of the engine. This gearing includes a pinion that is secured to the motor shaft and that is adapted to engage with a large gear on the engine flywheel, but is normally held out of engagement therewith by a spring that thrusts against the end of the shaft. When the motor circuit is closed, the field magnets act upon the armature as a solenoid and draw the shaft longitudinally against the tension of the spring until the pinion is in mesh with the gear on the flywheel. When the engine starts running under its own power, it speeds up the armature, thereby creating such a high counter electro-motive force that the current through the field coils falls to that point where the solenoid action is no longer sufficient to overcome the force of the spring, and the latter forces the shaft backward until the pinion is again disengaged from the engine gear."

A great number of motions were made, but need not be considered, as the parties have accepted the issues as presented. Rushmore relies on his filing date, September 27, 1912, and has taken no testimony. Bijur has produced a sketch upon which his case depends. If this sketch discloses the issue of the interference, Bijur is entitled to priority, because it is admitted that he built and operated the device shown in the sketch before Rushmore's filing date. Bijur admits that the counts of his issue do not read literally upon the sketch, as it has no sliding or axially movable armature.

The Patent Office tribunals found that the construction of the counts requires an armature **movable with** respect to the field

and normally displaced and the return of the armature to its normal displacement.

The contention made by Bijur is that "the axial movement of the motor member by mounting a pinion on a threaded shaft is old, certainly so far as Rushmore is concerned, as it is shown, for example, in the Bijur patent No. 1,095,696. It is accordingly submitted on behalf of Bijur that under these circumstances the above count is to be broadly construed, and that the equivalent for the axially movable armature is found in the axially movable pinion of the prior Bijur apparatus. Both forms of an axially movable motor member for automatic connection and disconnection with the load were old, and it is submitted that either form of apparatus fairly embodies the claim in question."

Courts cannot disregard limitations that are expressly defined in a patent; and the rule applies with greater force in the Patent Office between applications. *Collom* v. *Thurman,* 131 Off. Gaz. 359; *Wilson* v. *Ellis,* 42 App. D. C. 552–554. In that case it was said by Mr. Justice Van Orsdel, who delivered the opinion of the court: "There is a rule which has been long established and many times confirmed, that all limitations appearing in the counts of an interference will in interference proceedings in the Patent Office be regarded as material to the invention covered by such counts. This rule is the only practicable one which the Office can adopt. In its nature it is consistent with the principle which underlies the drawing and construction of claims as generally followed. Its application in practice is seldom found to result in injustice."

It follows that Bijur cannot be given the benefit of the date of the construction of his exhibit, and must be confined to his filing date of May 5, 1913, which is later than that of Rushmore.

The decision is affirmed, and the clerk will certify this decision to the Commissioner of Patents as required by law.

*Affirmed.*