### SEYMOUR v. MOLYNEUX.

(Court of Appeals of District of Columbia.   Submitted November 10, 1919.
Decided January 5, 1920.)

### No. 1243.

1. PATENTS ⬩106(2)—MEANING OF COUNTS IN INTERFERENCE PROCEEDINGS.

While a 'party will not be permitted to narrow his patent claims to suit a given situation, yet the meaning given counts of an interference proceeding must be that disclosed in the specification of the party first making the claim.

2. PATENTS ⬩112(1)—COURT WILL REVERSE PATENT OFFICE FINDINGS WHEN CONVINCED OF ERROR.

Although the court is reluctant to disturb the findings of the Patent Office in technical cases, yet it is its duty to do so when convinced that error has occurred.

3. PATENTS ⬩106(1)—CLAIMS TO SEWING MACHINE IMPROVEMENTS NOT INTERFERING WITH PRIOR PATENT.

A junior party's claim for a sewing machine mechanism intended to cover seams, so as to eliminate ridges, held not to interfere with the senior party's device, by which he automatically lapped pieces of goods being stitched.

Appeal from the Patent Office.

Interference proceedings in the Patent Office between George E. Molyneux and Dudley S. Seymour. From a decision for the senior party, Seymour appeals. Reversed, and priority awarded Seymour.

C. L. Sturtevant and E. G. Mason, both of Washington, D. C., for appellant.

John F. Heine, of Elizabeth, N. J. (Henry J. Miller, of Elizabeth, N. J., on the brief), for appellee.

ROBB, Associate Justice.   Appeal from a decision of the Patent Office in an interference proceeding awarding priority to the senior party; the contention of the junior party being that his adversary has no right to make the claim.

As originally declared the interference contained a single count, which had been formulated by the Primary Examiner and suggested to the parties.   The declaration of the interference having given each party access to the other's application, Molyneux presented an amendment containing six claims, which, as he represented to the Patent Office, embodied "the substance of allowed claims 14, 15, 16, and 17 of the Seymour application."   Seymour rested his case upon the contention that Molyneux had no right to make any of the seven claims of the interference.   A pro forma decision upon the record for the senior party was rendered by the Examiner of Interferences.   The Board of Examiners in Chief sustained Seymour's contention as to all save count 5, and their decision was affirmed by an Assistant Commissioner.   Count 5, the single count of this issue, reads as follows:

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"5. A feeding mechanism including, in combination, a feeding bar, two feeding elements arranged side by side and sustained by said feed bar for lateral movements relatively to said feed bar, guideway supporting means, guideways pivotally mounted on said supporting means and co-operating with the respective feeding elements for controlling the lateral movements thereof as the feed bar moves back and forth, and means whereby said guideways may be adjusted angularly about their respective pivots to vary the amplitude of lateral movement of the feeding elements."

The invention, according to Seymour's specification, "relates to new and useful improvements in sewing machines, and more particularly to a sewing machine having mechanism for covering previously joined edges of fabric sections." In the subjoined illustrative drawing entitled "Seymour," the two pieces of fabric in Fig. 1, represented by the letters a and b, have been stitched together in another machine at c. Before being fed to the Seymour machine the fabric sections are opened out, as in Fig. 2, the result being a slight ridge at c. Seymour's mechanism was designed and intended to cover the seam at c, in Fig. 2, in such a way as to result in the entirely flat seam shown in Fig. 3. He says in his specification that the object of his invention is to "provide mechanism for exerting a strain on the fabric sections prior to, or as they are being covered by the stitch-forming mechanism, so that the seam will be substantially flat," and to effectuate this he provides a mechanism "wherein feed dogs engage the respective fabric sections in advance of the stitching mechanism, and said feed dogs are moved away from each other as well as in the direction of feed for exerting a strain on the joined edges as they are being covered by the stitch-forming mechanism." The path of the feed dogs is capable of accurate adjustment; in other words, the strain on the fabric may be precisely regulated.

We do not deem it necessary to enter upon a technical examination of Seymour's mechanism. We have stated its function, and it is enough to say that the machine is fully capable of performing its intended function, namely to cover previously joined edges of fabric sections, so that the seam, when completed, is substantially flat.

Let us now turn for a moment to the Molyneux device. That, too, relates to a sewing machine, but Molyneux says the object of his invention is "to automatically lap two pieces of goods being stitched"; in other words, automatically lap and stitch two pieces of goods, as illustrated below in the drawing entitled "Molyneux." The letters a and b in Fig. 1 represent the two pieces of goods to be lapped and stitched by the machine, and Fig. 2 the completed work.

Molyneux points out in his specification that a greater overlap than is normally provided may be obtained by the pressing of a treadle by the operator.

[1-3] It thus will be seen that the parties were concerned with entirely different problems, and the count of the issue, having originated with Seymour, must receive an interpretation consistent with his specification. While we many times have ruled that a party will not be permitted to narrow his claims to suit the exigencies of a given situation, it is equally well settled that the meaning given to the counts of an interference must be that disclosed in the specification of the party first to make the claim. Funk v. Whitely, 25 App. D. C. 313; Podlesak v. McInnerney, 26 App. D. C. 399; Viele v. Cummings, 30 App. D. C. 455. The patent law contemplates an interference in fact rather than in mere words, and unless such an interference really exists it is a hardship and an injustice to permit an earlier applicant to go out of the Patent Office with a dominating claim. The court always is reluctant in technical cases to disturb the findings of the Patent Office, but when convinced that an error has been made it is our duty to do so. Arbetter v. Lewis, 34 App. D. C. 491.

We are convinced in the present case that this claim, when interpreted in the light of the application in which it originated, is not readable upon the Molyneux structure; in other words, that there are two distinct inventions, and that neither party should be given a claim that would dominate the other. In the Seymour structure, as already noted, the guideways are susceptible of very precise adjustment. This obviously was necessary to accomplish the result desired. One limitation of the claim of the issue is that the guideways are susceptible of being "adjusted angularly about their respective pivots." Molyneux contended, and the Patent Office ruled, that the manually operated treadle disclosed by Molyneux satisfied this limitation. We are unable to accept that finding. We think the term "adjusted," as here used, has a much more precise signification. Webster says that to adjust is "to fit, or make exact." In Seymour's machine precise adjustment not only was necessary but provided. In the Molyneux structure precise adjustment was unnecessary and unprovided. Certainly it may not be doubted that it would be impossible to achieve the same result with the manually operated treadle of Molyneux that may be produced by the mechanically operated device of Seymour. Having in mind that the problems confronting the two inventors were entirely different and that the machines designed for the solution of those problems also were entirely different, we are convinced that only by giving to the count of the issue a forced construction, out of harmony with the Seymour construction in which it originated, can it be read

upon the Molyneux device; in other words, we are convinced that Molyneux has no right to make this claim.

It results that the decision must be reversed and priority awarded Seymour.

Reversed.