### SEYMOUR v. MOLYNEUX.

(Court of Appeals of District of Columbia. Submitted November 11, 1919. Decided January 5, 1920.)

No. 1244.

PATENTS &⟶106(1)—CLAIMS FOR SEWING MACHINE IMPROVEMENTS INTERFERE ONLY IN PART.

A junior party's sewing machine mechanism for covering seams, so as to eliminate ridges, did not interfere with the senior party's device designed to overcome the tendency of certain goods to draw or pucker, except as to two claims, in which the mechanism operated similarly.

Appeal from the Patent Office.

Interference proceeding in the Patent Office between George E. Molyneux and Dudley S. Seymour. From a decision awarding priority, Seymour appeals. Reversed in part, and affirmed in part.

C. L. Sturtevant and E. G. Mason, both of Washington, D. C., for appellant.

John F. Heine, of Elizabeth, N. J. (Henry J. Miller, of Elizabeth, N. J., on the brief), for appellee.

ROBB, Associate Justice. This appeal is from a Patent Office decision awarding priority on the record to the senior party Molyneux. Seymour's application in this case is the same as that involved in Seymour v. Molyneux, 263 Fed. 468, 49 App. D. C. ——; but there is involved a different application of Molyneux. The issue is expressed in 11 counts, of which counts 1, 5, and 8 are illustrative:

"1. The combination of stitch-forming mechanism and four-motion feeding mechanism, including a main feed dog for engaging the stitched seam in rear of the stitch-forming mechanism, auxiliary feed dogs for engaging the fabric in advance of the stitch-forming mechanism, and means for moving said auxiliary feed dogs away from each other while in engagement with the fabric."

"5. A feeding mechanism for cylinder bed sewing machines, including, in combination, a feed bar having a forwardly extending free end portion, two forwardly extending arms each carried by and movably connected at its rear end to the free end portion of the feed bar, feeding teeth carried by said arms, and means for moving said arms in opposite directions during the feeding movements of the feed bar for causing said feeding teeth to stretch the fabric."

"8. In a sewing machine, the combination with stitch-forming mechanism including a pair of needle and covering thread handling means co-operating therewith to form seam-covering stitches, of means in advance of the needles for stretching and flattening a previously seamed fabric transversely of the

line of seam and maintaining it stretched while the previously formed seam is being covered by said stitch-forming mechanism."

As in the prior case, the claims of this interference were added by amendments to the Molyneux application after the Seymour application had been inspected by Molyneux, and they "embody the substance of" claims in the Seymour application. The attached drawing, entitled "Seymour," illustrates the operation of his divice:

*Seymour*

In the Seymour device the main feed dog operates upon the fabric in the rear of the needles, while the two auxiliary feed dogs *36* and *37*, shown in Fig. 3 of the drawing herein inserted, engage the fabric in advance of the needles. The stroke of these auxiliary feed dogs is a stitch length and has an outward motion, so that when the fabric is presented to the needles it is stretched flat. This is what Seymour intended to accomplish, and what in fact he did accomplish. Molyneux, according to his specification, was concerned with overcoming the tendency of light and elastic goods to "draw or pucker" when being covered, and hence his machine was designed to operate, and does operate, quite differently from that of Seymour, as illustrated in the drawing below:

*Molyneux*

It will be observed that in the Molyneux machine the feed dogs operate almost, if not entirely, in the rear of the needles. The Examiners in Chief recognized that only a limited number of feed dog teeth engage the fabric in advance of the stitch-forming mechanism, and the Assistant Commissioner was of the view that only a "small part" of the feed dogs "work in advance of the needles." In the Seymour device it was essential that the auxiliary feed dogs should have performed their entire function before the covering stitch was made; in other words, it was essential that at the moment when the seam was being covered the auxiliary feed dogs should hold the fabric in a stretched and flat position. It was not to prevent a "draw or pucker," but to eliminate a ridge, where two fabrics previously had been stitched together, that Seymour devised and constructed his machine. The importance of this distinction becomes apparent when an examination is made of the two drawings hereinbefore inserted and of the phraseology of the claims. In all save claims 5 and 6 is a limitation that the auxiliary feed dogs shall engage the fabric "in advance of the stitch-forming mechanism." The reason for

this limitation, which was essential, rather than arbitrary or accidental, we already have stated.

We think it obvious that, even though one or two of the Molyneux feed dog teeth engage the fabric at the instant the covering stitch is formed, it is a physical impossibility to accomplish through that engagement what Seymour's machine was designed to accomplish and does accomplish, namely, the flattening out and elimination of a ridge. To conclude otherwise would be to shut our eyes to the obvious. The Molyneux device, however, does accomplish the result intended by him, for his dogs are so arranged as to hold the fabric during and after the formation of the stitch in such a position that the fabric will not be drawn up by the action of the threads. Giving the claims mentioned the signification to which they are entitled in the Seymour application, where they originated, they are not readable upon the Molyneux machine.

Claims 5 and 6 do not contain the limitation that the auxiliary feed dogs must engage the fabric in advance of the stitch-forming mechanism. It is earnestly contended by Seymour that the Molyneux device contains no auxiliary feed dogs in the sense in which that term is used by Seymour. While that question is not free from doubt, we are inclined to accept the finding of the Patent Office, which results in an affirmance of the decision as to claims 5 and 6.

The decision is reversed as to claims 1, 2, 3, 4, 7, 8, 9, 10, and 11, and affirmed as to claims 5 and 6.

Reversed in part, and affirmed in part.