**JORGENSEN et al. v. KINGSLAND,**
**Commissioner of Patents.**

**Civil Action No. 2337-47.**

United States District Court,
District of Columbia.

March 18, 1949.

John G. Sbarbaro, of Washington, D. C., for plaintiffs.

W. W. Cochran, Sol., U. S. Patent Office, of Washington, D. C., for defendant.

TAMM, District Judge.

The plaintiffs bring this action under the provisions of Title 35 United States Code Annotated § 63, Revised Statutes, § 4915, for the purpose of compelling the defendant, the Commissioner of Patents, to issue to plaintiffs a patent for the subject matter of the plaintiffs' application for patent, Serial No. 585510, as defined by Claims Nos. 102, 119, 120 and 124 hereinafter described.

Plaintiffs Clarence H. Jorgensen and Peter J. Jorgensen, the latter now deceased, on January 8, 1932, filed in the United States Patent Office an application for a patent, which application was given, in the Patent Office, Serial No. 585510. Plaintiff General Motors Corporation is owner by direct assignment from plaintiffs Jorgensen of the entire interest in the patent application. As will be set out hereafter, the Commissioner of Patents rejected the claims which are the subject matter of this suit.

Plaintiffs initiated the present action on June 5, 1947, with reference to Claims Nos. 102, 119 and 120 and filed a supplemental amended complaint covering Claim No. 124 on September 24, 1948, to compel the issuance to them of the patent they claim. The present litigation relates to the following claims which are set out hereafter verbatim under the numbers by which they have been previously identified:

Claim 102. "In a carburetor, means forming a mixing conduit, said conduit including an air inlet, a fuel inlet, and a mixture outlet, a manually operated valve for said conduit, a valve for controlling the flow through one of said inlets to enrich or lean out the fuel mixture discharged by said carburetor, a heat responsive device capable of operation independent of suction for operating said valve in accordance with the temperature to lean out the mixture upon an increase of temperature, and means for operating said valve to lean out said mixture upon an increase in suction in the carburetor, said last-named means including a suction conduit connected to a point in the mixing conduit posterior to said manually operated valve."

Claim 119. "In a carburetor, means forming a mixing conduit, means forming

320

a venturi in said mixing conduit, a main fuel nozzle discharging into said venturi, a throttle controlling the discharge of mixture from said carburetor, a second fuel nozzle discharging into said mixing conduit adjacent said throttle valve, a valve for controlling the admission of air to said conduit, said valve being movable toward open position by direct action or suction, suction controlled means operatively connected to said valve, a thermostat operatively connected to said valve and tending to close said valve with a force which decreases with increase in temperature, the connection between said thermostat and said valve permitting said thermostat to continue to move after the movement of the valve has been arrested."

Claim 120. "In a carburetor, an induction passage having an air inlet, a valve controlling the air inlet, a throttle controlling the outlet of the induction passage, a pair of fuel nozzles discharging into the induction passage one discharging adjacent said throttle and the other discharging between said valve and said throttle, a bimetallic thermostat having an overrunning connection with said valve and adapted to close it when cold and to permit it to open when hot, a suction device connected to the induction passage posterior to the throttle and having a movable wall responsive to suction therein, said suction device including yielding means urging said wall in a direction opposite to the force exerted on it by suction, and a one-way actuating connection between the wall and the valve."

Claim 124. "In a carburetor, means forming a mixing conduit, a choke valve controlling the admission of air to said mixing conduit, said choke valve having a part which is movable toward open position by direct action of suction, suction operated means for opening said choke valve a limited distance only, said suction operated means being constructed and arranged to permit a continuance of the opening of said choke valve after the cessation of movement of said suction operated means, and a heat responsive element connected to said choke valve to control the same in conjunction with said suction operated device."

The record of the proceedings in the Patent Office relating to the patent claim of the present plaintiffs is a lengthy and involved one. The following Statement of Facts, agreed upon by counsel for both the plaintiffs and defendant, summarize the proceedings insofar as they are pertinent to the present case.

"On September 24th, 1935, three interferences were declared involving the application of Jorgensen et al., S.N. 585,510, filed January 8, 1932, involved in this action and the application of Ernest H. Shaff, S.N. 435,394, filed March 13, 1930 and now patent No. 2,365,910, granted December 26, 1944. These interferences were numbered 71,471, 71,472 and 71,473. The first two of these interferences involved Jorgensen et al., Shaff and a plurality of other parties, while the third involved Jorgensen et al., and Shaff only.

"On the same date, the application of Shaff was added in Interference 68,187, which had been declared March 30, 1934, and involved the aforesaid application of Jorgensen et al. and the applications of several other parties.

"The issues of the several interferences referred to above read as follows:

"Interference No. 68,187

"Count 1. In an internal combustion engine, a carburetor in which there is incorporated a choke valve which is so arranged that flow of air into the carburetor tends to open it, a passage connecting the carburetor with cylinders of the engine, an element actuated by variations in pressure within the passage, an element actuated by variations in temperature of the engine, means operatively interconnecting the first and second mentioned elements, and means operatively interconnecting the second mentioned element and the choke valve.

"Count 2. In an internal combustion engine, a carburetor in which there is incorporated a choke valve, a passage connecting the carburetor with the cylinders of the engine, an actuating element operatively connected to the choke valve, an element actuated by variations in pressure within the passage positively connected to the first mentioned element, and an element actuated by variations in temperature of

the engine positively connected to the first mentioned element.

"Count 3. The invention claimed in count 2, in which the first mentioned element is resiliently connected to the choke valve.

"Interference No. 71,471

"Count 1. In an internal combustion engine, a carburetor in which there is incorporated a choke valve, a passage connecting the carburetor with cylinders of the engine, an element actuated by variations in temperature of the engine operatively connected to the choke valve, and an element actuated by variations in pressure within the passage resiliently connected to the choke valve.

"Interference No. 71,472

"Count 1. A control mechanism for an internal combustion engine carburetor having an unbalanced choke valve comprising, a spring for holding the valve closed to start the engine, vacuum controlled means for removing the tension of said spring from the valve and a thermostat for controlling the degree of opening of the valve as a function of temperature.

"Interference No. 71,473

"Count 1. In combination, an intake pipe, a carburetor connected thereto, an air valve for said carburetor, a pneumatic motor actuated by suction in the intake pipe, and a yielding thermostat forming a connection between said motor and said valve.

"Count 2. In an internal combustion engine having a carburetor and an air valve therefor, thermostatic means connected with said valve and biasing the latter for movement toward a position dependent upon the temperature thereof, a movable member against which said thermostatic means reacts in establishing said bias, and means responsive to starting of the engine for shifting said member while providing for the continued control of the valve by said thermostatic means.

"Motions to dissolve on the ground of non-patentability were made in Interferences 68,187, 71,471 and 71,472 and were several times denied, but ultimately granted by the Primary Examiner after a series of requests for reconsideration. Inter-

ference 71,473 was dissolved by the Primary Examiner on the ground that Shaff could not make the counts. Appeals were filed by the parties Jorgensen et al. and Shaff in Interferences 68,187, 71,471, 71,472 and by Shaff in Interference 71,473.

"The decisions of the Primary Examiner were finally sustained by the Board of Appeals in each of the above interferences on the following dates: Interference 68,-187, March 27, 1939; Interferences 71,471 and 71,472, March 25, 1940; Interference 71,473, May 21, 1937.

"During the prosecution of these interferences, motions under Rule 109 [35 U.S. C.A.Appendix] to add counts were presented by Jorgensen et al. and other parties involved. As examples of the claims proposed in these motions, three of the counts urged by Jorgensen et al. to be added in Interference 68,187 appear below. These are claims 64, 65 and 72 of the application which were designated Claims B, C and A of two motions by Jorgensen et al. to add counts in Interference 68,187, dated June 8, 1935 and January 3, 1936 respectively.

"Serial No. 585,510

"64. A means for supplying a suitable starting mixture to an internal combustion engine under various conditions of temperature, which comprises in combination with the suction intake pipe of an engine of suction operated carburetor means connected to said pipe for mixing two fluids, namely, liquid fuel and air, and conducting them into said pipe, a movable valve which tends to be opened by the inflowing fluid which it controls, said valve controlling the flow of one of said fluids relative to the other, whereby to vary the fuel to air ratio of the mixture, a vacuum chamber having a movable wall, which closes the chamber in all positions of the wall, said wall being actuated by the drop in pressure in the said pipe for producing movement of said valve to decrease the ratio of fuel to air in the mixture as the drop of pressure increases, and a thermostat subject to heat from the engine for also producing movement of said valve to decrease the ratio of fuel to air in the mixture as the engine warms up.

"65. In combination with the suction intake pipe of an internal combustion engine, a carburetor having means for forming and delivering a mixture of air and liquid fuel into the pipe to start the engine, a valve for controlling the flow of one of said fluids into the carburetor in order to vary the fuel to air ratio of the mixture, a thermostat subject to heat from the engine unyieldingly connected to said valve and a pressure actuated element responsive to the suction in said manifold for modifying the effect of said thermostat upon said valve.

"72. In an internal combustion engine, a carburetor in which there is incorporated a choke valve which is so arranged that flow of air into the carburetor tends to open it, a passage connecting the carburetor with the cylinders of the engine, an element actuated by variations in pressure within the passage, a metallic member arranged to be heated with contact with exhaust gases from the engine, a temperature responsive element which is coupled thermally to said member, means interconnecting the first and second mentioned elements, and means operatively interconnecting the second mentioned element and the choke valve.

"All of the motions to add counts were ultimately denied and the claims quoted were held unpatentable by the Primary Examiner, whose action was affirmed by the Board of Appeals at the same time the Board rendered the decision on the motion to dissolve in Interference 68,187.

"During the pendency of the above mentioned interferences, the application of Shaff was involved in Interference 69,826 with the patent of George R. Ericson, No. 1,915,851. This interference had a single issue, claim 5 of the patent, which reads as follows:

"Interference 69,826—Shaff v. Ericson

"Count 1. In a carburetor, means forming a mixing conduit, said conduit including an air inlet, a fuel inlet, and a mixture outlet, a manually operated valve for said conduit, a valve for controlling the flow through one of said inlets to enrich or lean out the fuel mixture discharged by said carburetor, a heat responsive device capable of operation independent of suction for operating said valve in accordance with the temperature to lean out the mixture upon an increase of temperature, and means for operating said valve to lean out said mixture upon an increase in suction in the carburetor, said last named means including a suction conduit connected to a point in the mixing conduit posterior to said manually operated valve.

"The party Ericson was not involved in any of the interferences in which Shaff and Jorgensen et al. were both included.

"Priority in Interference 69,826 was finally awarded to Shaff by decision of the Court of Customs and Patent Appeals, June 19, 1939. The count of Interference 69,826 was not proposed by Jorgensen et al. in any motion under Rule 109, but on March 28, 1938, an amendment was filed in application S.N. 585,510 adding such claim and the amendment contained an ex parte request that an interference be declared with this claim as the issue and involving application S.N. 585,510.

"Subsequent to this request, the Patent Office, on April 21, 1938, declared Interference 75,713 involving Jorgensen et al. and Ericson only, failing to include Shaff as a party. This interference was withdrawn by the Primary Examiner May 3, 1938, before filing of preliminary statements. The Examiner stated that because of the advanced status of Interference 69,826, the application of Jorgensen et al. would be placed in interference with the successful party in Interference 69,826 after final termination thereof. A petition was filed by Jorgensen et al. urging immediate addition of application S.N. 585,510 in Interference 69,826, but the petition was denied by the Commissioner.

"After the decision of the C.C.P.A. awarding priority to Shaff in Interference 69,826, Interference 77,410 was declared on August 28, 1939, involving applications S.N. 585,510 of Jorgensen et al. and S.N. 435,394 of Shaff with the single count of Interference 69,826 as the issue. A motion by Shaff to dissolve this interference, on the ground that Jorgensen et al. was estopped with respect to the issue, was granted by the Primary Examiner on May

8, 1940 and the decision of the Examiner was affirmed by the Board of Appeals on December 23, 1940.

"The Primary Examiner and the majority of the Board of Appeals held that Jorgensen et al. was estopped with respect to this issue because it had not been presented in a motion under Rule 109 during the motion periods in those interferences in which Shaff and Jorgensen et al. were both involved. The decision of the majority of the Board of Appeals also implied that Jorgensen et al. was estopped by reason of laches (irrespective of Rule 109) in failing to seasonably present the issue of Interference 69,826 after Jorgensen et al. had knowledge of such interference through access to the Shaff application file, the period being from November 4, 1935 to March 28, 1938.

"Mr. Shaffer of the Board of Appeals wrote a dissenting opinion in which he stated that he agreed with the majority opinion that Jorgenson et al. was guilty of laches in failing to seek interference with Shaff when such party first discovered the issue count, but that he did not agree that Jorgensen et al. should have proceeded under Rule 109.

"The Primary Examiner specifically held that there was no estoppel with respect to Jorgensen et al. created by failure to copy the claim of a patent (Ericson 1,915,851) within the period of two years after its issuance and this ruling was not disturbed by the Board of Appeals.

"On June 22, 1943, the Examiner proposed a claim in the application of Jorgensen et al., S.N. 585,510, for interference purposes, under the provisions of Rule 96. This claim was added in said application by an amendment dated June 25, 1943, and reads as follows:

"95. In a carburetor, means forming a mixing conduit, said conduit including a main air inlet, a main fuel inlet, and a mixture outlet, a manually operated throttle valve for said conduit, an inlet valve for controlling the flow through one of said inlets to enrich or lean out the fuel mixture discharged by said carburetor, a heat responsive device for controlling said valve in accordance with the temperature to lean out the mixture upon an increase of temperature, said heat responsive device being constructed and arranged to operate said valve only when the temperature is below normal, and means for operating said valve to lean out said mixture upon an increase in suction in the carburetor, said last-named means including a suction conduit connected to a point in the mixing conduit posterior to said manually operated valve, and means for temporarily enriching the mixture delivered by said carburetor upon an opening movement of said throttle, regardless of the position of said inlet valve.

"This claim became the issue of Interference 80,733, Jorgensen et al. v. Ericson, in which priority was granted to Ericson by the Patent Office. Such claim was a claim of an application for reissue of the patent to Ericson 1,915,851 which was involved in the aforementioned interference with Shaff 69,826 and after the award of priority to Ericson, by the Patent Office, such claim was granted in Reissue Patent No. 22,742. Following this award of priority a suit was filed by Jorgensen et al. under the provisions of Sec. 4915, R.S. in the District Court of the United States, Eastern District of Missouri, Eastern Division. This suit is Civil Action 4545, Clarence H. Jorgensen, Clarence H. Jorgensen, Administrator, and General Motors Corporation, Plaintiffs vs. George R. Ericson and Carter Carburetor Corporation, Defendants [D.C., 81 F.Supp. 614].

"On April 29, 1944, very soon after publication of the decision in Bendix [Aviation Corp.] v. Coe, [D.C.] 55 F.Supp. 27, 61 U.S.P.Q. 78, Jorgensen et al. presented a request in application S.N. 585,510 urging that the above mentioned Interference 77,-410 should be declared on the ground that the decision of the District Court in Bendix [Aviation Corp.] v. Coe overruled the decision of the Board of Appeals in affirming the dissolution of Interference 77,410. This request was denied by the Examiner on May 4, 1944, and the count of Interference 77,410 was issued to Shaff as claim 11 of patent No. 2,365,910, previously referred to.

"Claim 102, involved in this action, is a duplicate of claim 87 of application S.N. 585,510, is the same as claim 11 of the pat-

ent to Shaff No. 2,365,910, and is the same as the issue of Interferences 69,826 and 77,410.

"On June 4, 1940 Interference 78,345, involving the then pending application of Otto Henning, S.N. 575,577, filed November 17, 1931, and application S.N. 585,510 of Jorgensen et al., was declared. Priority in this interference was awarded to Henning by the Board of Interference Examiners on October 31, 1945, and this decision was adhered to in a decision dated December 26, 1945, on a request for reconsideration filed by Jorgensen et al.

"Following this decision suit was filed by Jorgensen et al. and the assignee of application S.N. 585,510, under the provisions of Sec. 4915, R.S., in the District Court of the United States, Eastern District of Missouri, Eastern Division and is designated Civil Action 4544, in which the parties are Clarence H. Jorgensen, Clarence H. Jorgensen, Administrator, and General Motors Corporation, Plaintiffs, vs. Otto Henning and Carter Carburetor Corporation, Defendants [81 F.Supp. 621].

"Following the award of priority to Henning by the Patent Office, the application of Henning S.N. 575,577 was issued as Patent No. 2,421,733 on June 3, 1947.

"Interference 78,345 was originally declared with one count which read as follows:

"Count 1. In an internal combustion engine, means forming a mixing conduit, a throttle for controlling the mixture discharged from said conduit, a choke for controlling the admission of air to said conduit, means for partially closing said choke in response to an opening movement of said throttle when the temperature is low, thereby giving a richer mixture for acceleration, and heat responsive means for preventing such partial closing of the choke when the temperature is high.

"A motion to add five additional counts was presented by Jorgensen et al. and after a plurality of reconsiderations, this motion was granted with respect to four of the proposed counts. These counts read as follows:

"Count 2. In combination with an internal combustion engine having an intake manifold, a carburetor having a throttle and a choke valve, temperature responsive means influencing the movements of said valve and operative to move said valve toward open position when hot, and suction operated means capable of moving the valve to at least a partially opened position, said suction operated means comprising a chamber having a fluid connection with the intake manifold at a point posterior to the throttle and having a movable spring pressed wall subject to the suction at said point, said choke valve being moved to fully open position when the normal operating temperature is reached or exceeded and remaining in such fully open position as long as said normal operating temperature is maintained or exceeded regardless of suction.

"Count 3. The combination with an internal combustion engine, a carburetor having a choke, temperature responsive means yieldingly urging the valve toward closed position, and suction operated means capable of moving the valve to at least a partially opened position when the temperature responsive means tends to hold the choke valve in closed position, said choke valve being moved to fully open position when the normal operative temperature is reached or exceeded and remaining in such fully open position as long as said normal operating temperature is maintained or exceeded regardless of suction.

"Count 4. In or for an internal-combustion engine having a control for varying the fuel mixture, the combination of a thermostatic bi-metallic element having a part which is movable according to changes of engine temperature, linkage means connecting said movable part for coupling with the fuel mixture control, a pressure responsive device for operation according to pressure in the induction system of the engine and a lost motion connection operatively connected between said pressure-responsive device and said linkage means.

"Count 5. In combination with an internal combustion engine a carburetor having a choke valve, temperature responsive means yieldingly urging the choke valve toward closed position, and suction operated means capable of moving the valve to a partially opened position while said tem-

perature responsive means urges the choke valve toward closed position, said choke valve being moved to fully open position when the normal operating temperature is reached or exceeded and remaining in such fully open position as long as said normal operating temperature is maintained or exceeded, regardless of suction.

"During the pendency of this interference, on November 13, 1941, an alleged division of the Henning application S.N. 575,577 was filed as application S.N. 418,980, and before any grant of priority to Henning by the Patent Office in Interference 78,345, this application was issued as patent No. 2,306,251, on December 22, 1942.

"On December 6, 1946, a claim, No. 124, was added by amendment in application S.N. 585,510 of Jorgensen et al. It was stated in this amendment that the claim was a claim of the application of Henning, S.N. 575,577, was a count of Interference 82,261 involving such application and an application of Scott F. Hunt. It was also stated that such claim was deemed readable on the structure disclosed in application S.N. 585,510 and it was requested that such claim be made the issue of an interference involving the parties, Jorgensen et al., Henning and Hunt.

"The statement made at the time claim 124 of Jorgensen et al. was presented, that it was a claim of the then pending application of Henning S.N. 575,577, is not altogether correct. The claim was originally a claim of the Henning application 575,577, but was issued as claim 7 of the Henning patent No. 2,306,251 and was taken out of application S.N. 575,577 before the latter was issued as Patent No. 2,421,733."

 In considering the plaintiffs' action, insofar as it relates to Claim No. 102, it is noted that the Patent Office rejected this claim solely on the ground of estoppel. The defendant takes the position that under the provisions of Patent Office Rule 109[1] the plaintiffs having failed to include Claim No. 102 in Interference 71,473, are now estopped from asserting this claim. The plaintiffs' position is that they were unable, as a procedural matter, to assert this claim at the time of the interference proceedings set forth. The Court cannot concur in the plaintiffs' conclusions, pointing out that in Interference 71,473, between the

---

[1] Rule 109. "An applicant involved in an interference may, within a time fixed by the examiner of interferences not less than thirty days after the preliminary statements (referred to in rule 110) of the parties have been received and approved, or if a motion to dissolve the interference has been brought by another party, within thirty days from the filing thereof, on motion duly made as provided by rule 153, file an amendment to his application containing any claims which in his opinion should be made the basis of interference between himself and any of the other parties.

"Such motion must be accompanied by the proposed amendment, and when in proper form will be set by the examiner of interferences for hearing before the primary examiner. Where a party opposes the admission of such an amendment in view of prior patents or publications, full notice of such patents or publications, applying them to the proposed counts, must be given to all parties at least twenty days prior to the date of hearing. On the admission of such amendment and the adoption of the claims by the other parties within a time specified the primary examiner shall redeclare the interference or shall declare such other interferences as may be necessary to include the said claims. New preliminary statements will be received as to the added claims, but motions for dissolution with regard thereto will not be considered where the questions raised could have been disposed of in connection with the admission of the claims. Amendments to the specification will not be received during the pendency of the interference without the consent of the Commissioner, except as provided herein and in rule 106.

"Any party to an interference may bring a motion to put in interference any claims already in his application or patent which should be made the basis of interference between himself and any of the other parties. Any party to an interference may bring a motion to add or substitute any other application owned by him, as to the existing issue, or to include an application or a patent owned by him, as to claims which should be made the basis of interference between himself and any of the other parties. Such motions are subject to the same conditions and the procedure in connection therewith is the same, so far as applicable, as hereinabove set forth for motions to amend."

plaintiffs and Shaff, the plaintiffs, as early as November 4, 1935, and throughout the motion period in Interference 71,473, had access to the Shaff application and consequently had constructive knowledge, if not actual knowledge that Shaff claimed to be the inventor of the subject matter of plaintiffs' claim No. 102. Moreover, the witness Morton, testifying for plaintiffs, stated at the hearing in this case relative to Claim 102, that he knew in 1935 that Shaff was claiming to be the inventor of this structure. Accordingly, under the provisions of Patent Office rule 109, the plaintiffs could have filed a motion in Interference 71,473, seeking the declaration of an interference between Shaff and themselves on Claim No. 102. In addition, having access to the Shaff application and having actual or constructive knowledge of the contents thereof, the plaintiffs must be charged with knowledge that the Shaff claim was then involved in another interference between Shaff and a patent to Ericson, No. 1,915,851. The plaintiffs failed, however, to assert in the interference proceedings their Claim No. 102 until March 28, 1938, which was more than two years after their access to the Shaff application through Interference 71,473. The contention of the plaintiffs that they did not assert Claim 102 because Ericson was not a party to Interference 71,473, is not a valid objection since the plaintiffs could by motion, timely brought, have included Claim 102 in Interference 71,473 and joined Ericson in this interference. The Court of Appeals for the District of Columbia stated in Re Dement, 49 App. D.C. 261, 263, 263 F. 813, 815:

"It has long been settled law that a judgment between the same parties upon the same cause of action is res judicata, 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' (Citing authorities.)"

Again in Re Wasserfallen, 54 App.D.C. 367, 369, 298 F. 826, 828, the Court of Appeals for the District of Columbia said:

"In so far as the Patent Office and this court are concerned, the adjudications already had in this matter have finally settled, not only the rights of the parties under the issue or counts of the interference, but every question and the rights to every claim which might have been presented and determined in the interference proceedings." Citing authorities including Blackford v. Wilder, 28 App.D.C. 535, 542.

In the case of International Cellucotton Products v. Coe, 66 App.D.C. 248, at page 250, 85 F.2d 869, at page 871, the Court says:

"While the court in * * * Re Dement, and Re Wasserfallen, supra, did not in terms refer to Rule 109, its decisions in those cases were nevertheless based upon the theory that where there is an opportunity to include claims in an interference (which are issuable therein) the failure to move to include them precludes their later assertion, this under the doctrine of res judicata. It may be noted further that while Rule 109 was not referred to in the cases just mentioned, it was in existence at the time of the decisions. It was referred to in the briefs in * * * In re Dement. In Re Capen, 43 App.D.C. 342, and in Application of Doble, 57 App.D.C. 10, 16 F.2d 350, where also it was held that an estoppel arose by omission to assert claims in an interference, Rule 109 was in terms referred to. While those two cases do not refer expressly to the doctrine of res judicata, the theory of decision in Re Capen was clearly enough that doctrine for the court says, referring to Rule 109, 'The object of this rule obviously is to require the parties to an interference to have determined in that proceeding all rights growing out of their respective applications.'"

The Court in its decision in the International Cellucotton Products case, supra, quoted from a ruling of the United States Court of Customs and Patent Appeals, in the case of In re Chase, 71 F.2d 178, 21 C.C.P.A., Patents, 1183, as follows:

"'The rule is well settled in patent law that, as far as the Patent Office and this court are concerned, an interference settles not only the rights of the parties under the issues or counts of the interference, but also settles every question of the rights to every claim which might have been presented and determined in the interference

proceedings. The rule was thus stated in Re Wasserfallen, 54 App.D.C. 367, 298 F. 826, and similarly stated in a number of cases there cited. The doctrine has been discussed in a number of cases in this court. In re Austin, 40 F.2d 756, 17 C.C. P.A., Patents, 1202; In re Ellis & Holden, 47 F.2d 963, 18 C.C.P.A., Patents, 1060; In re Krauch et al., 56 F.2d 290, 19 C.C. P.A., Patents, 1003, and In re Boudin, 58 F.2d 448, 19 C.C.P.A., Patents, 1187. The latest expressions in this court on the subject are in the cases of In re Shimer, 69 F.2d 556, 21 C.C.P.A., Patents, 979, and In re Alexanderson, 69 F.2d 541, 21 C.C.P.A., Patents, 983. The rule of estoppel is applied in such cases for the reason that it is necessary to put an end to litigation in the Patent Office. See In re Capen, 43 App. D.C. 342, 344; In re Marconi, 38 App.D.C. 286, 293."

From the facts, the Court finds that the action of the defendant in rejecting Claim 102 was proper and must be sustained.

Plaintiffs' Claims Nos. 119 and 120 were copied by the plaintiffs from the patent to Shaff, No. 2,365,910, in which they appear as Claims 29 and 30, respectively, and were rejected by the Patent Office on the ground that their subject matter is not disclosed in the plaintiffs' application. In reviewing the Patent Office action, it is recalled from the case of Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606, that an applicant who copies claims for an issued patent has the burden of showing a clear basis for them in his disclosure and that any doubt as to the applicant's right to make these claims must be resolved against him. It is also well established that the claims must be literally readable on what the application discloses. Bijur v. Rushmore, 46 App.D.C. 395; Potts v. Kimball, et al., 134 F.2d 327, 30 C.C.P.A., Patents, 847. Further it is established by Seymour v. Molyneux, 49 App.D.C. 216, 263 F. 468, that in interpreting claims which originated in a patent, the meaning given them must be intended by the patentee.

Claim 119 recites, inter alia, a carburetor having a valve controlling the admission of air which must be the valve 14 (See Fig. 8) of plaintiffs' device; and a thermostat operatively connected to the valve and tending to close it, which must be plaintiffs' thermostat 119. The claim further states that the connection between the thermostat and the valve permits the thermostat to continue to move after the movement of the valve has been arrested. In the Court's opinion, this language clearly calls for a lost motion connection, and such a connection is shown in the Shaff patent (Fig. 7) in which the valve 43 and thermostat 56 are connected by a spring 60, which permits the thermostat to continue to move after the valve is fully closed. No such yielding connection is provided in the plaintiffs' construction. Figs. 7 and 8 of the application show that the thermostat 19 is *rigidly* connected to the valve 14 by the rod 13. The yielding after the valve closes consequently must take place in the thermostat and not in the connection.

Applying the principles set out above to the facts as enumerated, the Court concludes that plaintiffs' Claim 119 is lacking in literal readability as against the Shaff patent because of the lack of a yielding connection since, as shown by Figs. 7 and 8 of plaintiffs' application, the yielding takes place in the thermostat and not in the connection. The Court, therefore, concurs in the finding of the Patent Office with respect to this claim.

Plaintiffs' claim 120 calls for an "overrunning connection between the thermostat and the valve." The observations set forth above relating to this connection are applicable to the consideration of Claim 120. The Court considers that the plaintiffs' application fails to disclose such a connection. It is further noted that in the testimony at the hearing of this case, plaintiffs' witness, Morton, admitted that the same connection was designated, in 1935, as "unyielding" with reference to plaintiffs' Claim 65. The plaintiff's designation, in their own language, of the connection as "unyielding," in their own description of their device, must be considered as probably more accurate than contrary language adopted in an attempt to appropriate the claim of another patent applicant. Claim 120 further calls for a suction device having a movable wall and a one-way connection between the wall and the valve. At the hearing of this case, the witness, Mor-

ton, in attempting to read this claim on the Jorgensen structure, identified the piston 32 as the "movable wall." In the light of the foregoing, the Court concurs in the finding of the Patent Office that this claim is not readable upon the plaintiffs' application.

Plaintiffs' claim 124 was copied from the patent to Henning, S.N. 2,306,251, granted December 22, 1942, in which patent it appears as Claim 7. The portion of the claim in question is that which calls for a choke valve having a part which is movable toward the open position by direct action of suction. Fig. 2 of the Henning patent shows that the choke valve is composed of two sections, 11 and 12, the former section being rigidly attached to the valve shaft 10, while the latter section is movable by the action of suction. It follows that this means that one part of the valve is movable by suction while another part is not. In the plaintiffs' device there is no part of the choke valve which is movable with respect to another part, but rather the entire valve moves as a unit under the action of suction. The fact that the entire valve is movable cannot justify, in the normal or intended use of words, plaintiffs' contention that this characteristic permits the application of a description that a portion of the entire valve constitutes a movable part. In other words, the fact that an entire object moves does not justify a statement that an otherwise rigid component thereof constitutes a "movable part" of the greater object.

The Patent Office rejected plaintiffs' Claim 124 for the further reason that it was not copied within one year of the date of the Henning patent in accord with the requirements of Section 51, Title 35 U.S.C. A., which provides that:

"No amendment for the first time presenting or asserting a claim which is the same as, or for substantially the same subject matter as, a claim of an issued patent may be made in any application unless such amendment is filed within one year from the date on which said patent was granted."

The Henning patent, on which Claim 124 was copied, was granted on December 22, 1942, but the plaintiffs' amendment presenting the claim was not filed until December 6, 1946—almost four years later. The Court concludes that the Patent Office properly rejected Claim 124 upon this statutory basis.

Because of the Court's support of the Patent Office finding on Claim 124 on the two grounds enumerated, it is unnecessary to consider the further question of estoppel in this case or the effect thereupon of the ruling of the District Court of the United States for the Eastern District of Missouri, Eastern Division, in the case of Jorgensen et al. v. Henning et al., 81 F.Supp. 621, Civil Action 4544.

In accord with the above findings on the several claims, the Court concludes that the plaintiffs are not entitled to the relief asked in their complaints. This opinion will, in accordance with the Rules, constitute the Court's findings of fact and conclusions of law.

Counsel will prepare the necessary order.

